Argued and submitted November 8, 1996; reassigned February 3; reassigned
September 16, 1998; certified questions answered April 22, 1999

# FEDERAL DEPOSIT INSURANCE CORPORATION,
a federal corporation,
as manager of the
FSLIC Resolution Fund,
*Plaintiff,*

*v.*

## Kenneth H. SMITH,
Richard Hoffman, Robert Dene Bateman,
William M. Dalton, Jack C. Darley,
Stanley N. Hammer, and Robert B. Lorence,
*Defendants.*

(USDC CV-93-01112-HJF; USCA 95-35312; SC S43258)

980 P2d 141

Honorable Stephen Reinhardt, United States Circuit Judge.

E. Joseph Dean, of Stoel Rives LLP, Portland, argued the cause for defendants Kenneth H. Smith, Robert Dene Bateman, William M. Dalton, Jack C. Darley, Stanley N. Hammer, and Robert B. Lorence. With him on the briefs was Steven T. Lovett, Portland.

No appearance for defendant Richard Hoffman.

Kathryn Norcross, Washington, D.C. argued the cause for plaintiff Federal Deposit Insurance Corporation. With her on the brief were William R. Turnbow, of Hershner, Hunter, Moulton, Andrews & Neill, Eugene, and Ann S. Duross and Thomas L. Hindes, Washington D.C.

Lori Irish Bauman, of Ater Wynne Hewitt Dodson & Skerritt, Portland, filed a brief on behalf of *amicus curiae* Oregon Association of Defense Counsel.

John W. Stephens, of Esler, Stephens, and Buckley, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, and Durham, Justices.*

GILLETTE, J.

---

* Fadeley, J., retired January 31, 1998, and did not participate in this decision; Graber, J., resigned March 31, 1998, and did not participate in this decision; Kulongoski, J., did not participate in the consideration or decision of this case.

## GILLETTE, J.

The questions presented in this case have been certified to us by the United States Court of Appeals for the Ninth Circuit under the Uniform Certification of Questions of Law Act, ORS 28.200 *et seq.*, and ORAP 12.20. *See generally Western Helicopter Services v. Rogerson Aircraft*, 311 Or 361, 811 P2d 667 (1991) (discussing factors court considers in exercising discretion to accept certified questions). The certified questions involve whether Oregon applies the doctrine of "adverse domination" in the context of a corporation suing its directors and officers and, if it does, what version of that doctrine applies. For the reasons that follow, we conclude that Oregon does apply the doctrine and that the "disinterested majority" version of the doctrine applies in this case.

We take the facts from the Ninth Circuit certification order:

> "Family Federal Savings & Loan Association (Family Federal) was a federally insured thrift headquartered at Dallas, Oregon. On January 10, 1990, the Office of Thrift Supervision determined that Family Federal was insolvent. The Office, therefore, appointed the Resolution Trust Corporation [(RTC)] as receiver for Family Federal, and on that date, RTC purchased all of Family Federal's claims against its directors and officers. Over three years later, on September 8, 1993, RTC, as successor in interest to Family Federal, filed this action against Kenneth Smith, Richard Hoffman, Robert Bateman, William Dalton, Jack Darley, Stanley Hammer, and Robert Lorence. It alleged causes of action for negligence, breach of fiduciary duty, and breach of contract.[1]

> "In January of 1984, Smith, Dalton, Darley, Hammer and Lorence were members of the board of directors of Family Federal. Bateman became a member in 1984, after the death of another member. At all relevant times, they constituted the majority of the board of directors of Family

---

[1] This action originally was brought by the Resolution Trust Corporation (RTC), the predecessor in interest to the Federal Deposit Insurance Corporation (FDIC). FDIC statutorily succeeded RTC when RTC ceased to exist in 1995. *See* 12 USC § 1441 a(m)(1) (accomplishing the changeover). For purposes of simplicity and consistency, we refer to RTC throughout this opinion.

Federal. Hoffman was * * * Family Federal's Loan Manager at all relevant times.

"In January of 1984, the Board of Directors approved the purchase of a $2,000,000 participation in a $31,000,000 loan to finance construction of a hotel, and by May of that year the directors and officers were aware of difficulties which had come to light; it then appeared that the loan had been ill advised.

"In May of 1985, the directors agreed to fund $2,900,000 of time share loan paper, which involved time share units located at Indian Wells Resort. That also turned out to be a poor investment, which was criticized by federal examiners as early as April of 1986.

"Stephen Way, who did not participate in those transactions, became a director in August of 1987. Before that, he had been an officer and had attended board meetings from at least November 1983 forward. Other officers also attended board meetings throughout that time."

*F.D.I.C. v. Smith*, 83 F3d 1051, 1052 (9th Cir 1996).

RTC's claims are based on defendants' approval of the multi-million dollar investments described above. RTC's complaint alleges negligence, breach of fiduciary duty, and breach of contract, but does not accuse defendants of acting in their own interests or allege fraud or intentional misconduct.

■ RTC is a federal entity that is asserting a claim against the officers and directors of Family Federal. It received the claim by assignment upon being appointed as receiver for Family Federal. When a federal entity attempts to assert a claim under such circumstances, the court must conduct a two-step analysis to determine what statute of limitations applies. *See, e.g., F.D.I.C. v. Dawson*, 4 F3d 1303, 1306-97 (5th Cir 1993) (explaining that 12 USC § 1821(d)(14) does not revive stale state law claims and describing two-step process). First, the court must determine whether the applicable state limitations period expired before the assignment. If it expired, there is no claim to be assigned, and the action is barred as a matter of law. If a viable claim existed at the time of assignment, however, then the court must determine whether the applicable federal statute of limitations has

expired.[2] The question of adverse domination is relevant to the first prong of the foregoing analysis, *viz.*, determining whether the state statute of limitations already had expired before the federal entity stepped in.

After RTC filed its action, defendants moved for summary judgment on the ground that RTC's claims were barred by Oregon's two-year statute of limitations contained in ORS 12.110(1).[3] The district court denied defendants' motion, concluding that, in this case, Oregon would recognize the doctrine of "adverse domination" and would hold that, under that doctrine, accrual of the claims was delayed until RTC took control of Family Federal in 1990, making RTC's complaint timely under an applicable three-year federal statute of limitations. *Resolution Trust Corp. v. Smith*, 872 F Supp 805, 813-15, *amended* 879 F Supp 1059 (D Or 1995). The district court granted defendants' motion for an interlocutory appeal of that ruling.

Because Oregon appellate courts have not previously decided the issue whether Oregon recognizes the doctrine of adverse domination, the Ninth Circuit certified the following two questions to this court:

"(1)   Under Oregon law[,] does the doctrine of adverse domination delay the running of the statute of limitations for causes of action based upon negligence? Does it do so for causes of action based upon breach of fiduciary duty? Does it do so for causes of action based upon breach of contract?

"(2)   If the doctrine of adverse domination does apply to any or all of the mentioned causes of action, what version is

---

[2] When a federal entity becomes conservator of a financial institution, acquiring the assets of that institution, 12 USC § 1821(d)(14) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 provides that the entity will have three additional years from the date of conservatorship or accrual, whichever is later, in which to file suit on a tort claim and six additional years in which to file suit on a contract claim.

[3] ORS 12.110(1) provides, in part:

"An action * * * for any injury to the * * * rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

applied, the disinterested majority version or the single disinterested director version?"

*Smith*, 83 F3d at 1053.

■■ Before turning to an analysis of Oregon law, some background information is helpful. The doctrine of adverse domination has gained currency in recent years in the context of litigation against directors and officers of insolvent financial institutions. The doctrine serves either to delay the accrual of a claim by a corporation against its directors and officers, or, in the alternative, to toll the running of the applicable statute of limitations. The doctrine is premised on the theory that it is impossible for the corporation to bring the action while it is controlled, or "dominated," by culpable officers and directors. Courts applying the doctrine of adverse domination have reasoned that corporations act only through their officers and directors, and those officers and directors cannot be expected to sue themselves or to initiate any action contrary to their own interests.[4] *See, e.g., Hecht v. Resolution Trust*, 333 Md 324, 340, 635 A2d 394, 402 (Md 1994) (explaining the rationale behind the doctrine); *Federal Sav. and Loan Ins. Corp. v. Williams*, 599 F Supp 1184, 1194 (D MD 1984) (same); *Federal Deposit Ins. Corp. v. Bird*, 516 F Supp 647, 651 (D PR 1981) (same). Similarly, culpable corporate officers and directors cannot be expected to disclose their wrongful conduct to the corporation. *Hecht*, 333 Md at 340, 635 A2d at 402; *Williams*, 599 F Supp at 1194; *Bird*, 516 F Supp at 651.

■ Courts that apply the doctrine of adverse domination have developed two versions of the doctrine, the "disinterested majority" version and the "single disinterested director" version. The versions differ with respect to the degree of control or domination considered necessary to delay accrual

---

[4] A minority of courts that have considered this issue have declined to recognize the doctrine of adverse domination, concluding that the doctrine is inconsistent with applicable state law tolling doctrines and policies of strictly construing statutes of limitations. *See, e.g., Resolution Trust Corp. v. Armbruster*, 52 F3d 748, 752 (8th Cir 1995) (concluding that Arkansas courts do not recognize the doctrine of adverse domination); *Resolution Trust Corp. v. Artley*, 28 F3d 1099, 1102 (11th Cir 1994) (finding the doctrine inapplicable under Georgia law); *F.D.I.C. v. Cocke*, 7 F3d 396, 402-03 (4th Cir 1993) (declining, under Virginia law, to apply the doctrine to the case at issue but noting that Virginia recognizes the tolling doctrine of equitable estoppel in cases involving intentional concealment).

of a claim or to toll the otherwise applicable statute of limitations. Under the disinterested majority version, a plaintiff benefits from a presumption that the cause of action does not accrue or the statute of limitations does not run so long as the culpable directors remain in the majority, *i.e.*, until the corporation has a disinterested majority of nonculpable directors. *See, e.g., Resolution Trust Corp. v. Scaletty*, 257 Kan 348, 351-52, 891 P2d 1110, 1113 (Kan 1995) (explaining the two versions of the doctrine); *Williams*, 599 F Supp at 1193-94 (describing the "disinterested majority" version). Defendants can rebut that presumption with evidence that someone other than the wrongdoing directors had knowledge of the basis for the cause of action, combined with the ability and the motivation to bring an action. *Resolution Trust Corp. v. Grant*, 901 P2d 807, 816 (Okl 1995).

■    In contrast, under the single disinterested director version of the doctrine, statutes of limitations are tolled only so long as there is no director with knowledge of facts giving rise to possible liability who could have induced the corporation to bring an action. Under that version, a plaintiff has the burden of showing that the culpable directors had full, complete, and exclusive control of the corporation, and must negate the possibility that an informed director could have induced the corporation to sue. *Scaletty*, 257 Kan at 352, 891 P2d at 1113; *see also Farmers & Merchants Nat. Bank v. Bryan*, 257 Kan at 352, 902 F2d 1520, 1523 (10th Cir 1990) (" '[O]nce the facts giving rise to possible liability are known, the plaintiff must effectively negate the possibility that an informed director could have induced the corporation to sue.' " (*quoting International Rys. of Cent. Am. v. United Fruit Co.*, 373 F2d 408, 414 (2d Cir 1967)).

With that background in mind, we turn now to the first certified question, which we repeat here for convenience:

"Under Oregon law does the doctrine of adverse domination delay the running of the statute of limitations for causes of action based upon negligence? Does it do so for causes of action based upon breach of fiduciary duty? Does it do so for causes of action based upon breach of contract?"

We begin our analysis with the primary issue, *viz.*, whether Oregon recognizes the doctrine of adverse domination. In considering that question, the federal district court treated adverse domination as a corollary to Oregon's "discovery" rule, a rule of interpretation of statutes of limitation that has the effect of tolling the commencement of such statutes under certain circumstances.[5] *See Huff v. Great Western Seed Co.*, 322 Or 457, 461 n 3, 909 P2d 858 (1996) (so defining discovery rule). The district court concluded that Oregon would adopt the adverse domination doctrine and applied the doctrine in the context of RTC's claims for simple negligence, breach of fiduciary duty, and breach of contract. *Smith*, 872 F Supp at 815 ("The court concludes that the defendants have failed to establish as a matter of law that the claims for negligence, breach of fiduciary duty, and breach of contract accrued before January 10, 1988.").

■■ Like the district court, we also use the discovery rule as a starting point in our analysis. In general terms, a cause of action does not accrue under the discovery rule until the claim has been discovered or, in the exercise of reasonable care, should have been discovered. *Gaston v. Parsons*, 318 Or 247, 256, 864 P2d 1319 (1994). This court explained in *Gaston*, in the context of a medical negligence claim, that, under the discovery rule, a plaintiff must have a reasonable opportunity to become aware of the following three elements before the statute of limitations will begin to run: (1) harm; (2) causation; and (3) tortious conduct. 318 Or at 255-56. *See also Doe v. American Red Cross*, 322 Or 502, 513, 910 P2d 364 (1996) (identifying tortious conduct as the third element of the discovery rule in the context of ORS 12.110(1)). The *Gaston* court explained that

> "the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that each of the three elements * * * exists."

---

[5] Other courts that have considered this issue have treated the matter similarly. *See, e.g., Resolution Trust Corp. v. Chapman*, 895 F Supp 1072, 1078 (CD Ill 1995) ("In sum, the adverse domination doctrine is simply a common sense application of the discovery rule to a corporate plaintiff.").

318 Or at 256.

Gaston and Doe concern an *individual's* knowledge or discovery that he or she may have a claim. If the principles discussed in those cases also pertain to the corporate context, then they do so by analogy. To complete the analogy, then, we must determine when, under Oregon law, a corporation can be deemed to "know" that it has a claim.

■■ A potential corporate plaintiff is not a sentient being and, therefore, cannot "know," be aware of, or discover anything, except through the agency of its officers, directors, and employees. A corporation generally is charged with knowledge of facts that its agents learn within the scope of their employment. *State Farm Fire v. Sevier*, 272 Or 278, 288, 537 P2d 88 (1975); *Woodtek, Inc. v. Musulin*, 263 Or 644, 650, 503 P2d 677 (1972); *Phillips v. Colfax Company, Inc.*, 195 Or 285, 300, 243 P2d 276 (1952); *Fleishhacker v. Portland News Pub. Co.*, 158 Or 476, 486-87, 77 P2d 141 (1938). However, while it is appropriate to impute knowledge of an agent to its principal in order to protect innocent third parties, that rule should not be used to shield agents whose wrongful conduct harms their own principal, where the action is one brought by the principal against the agent. *See Sutherland v. Wickey*, 133 Or 266, 286, 289 P 375 (1930) (noting the principle that notice to an agent whose interests are conflicting with his principal is not notice to the principal, applies to public agents).

Oregon courts long have recognized such an "adverse interest" exception. As the court stated in *Saratoga Inv. Co. v. Kern*, 76 Or 243, 254, 148 P 1125 (1915), a corporation is charged with knowledge of what its agent knows, unless "the agent's *relations to the subject matter are so adverse as to practically destroy the relationship*, as when the agent is acting in his own interest and adversely to that of his principal, or is secretly engaged in attempting to accomplish a fraud which would be defeated by a disclosure to his principal." (Emphasis added.) *See also Restatement (Second) of Agency*, § 279 (1958) ("The principal is not affected by the knowledge of an agent as to matters involved in a transaction in which the agent deals with the principal * * * as * * * an adverse party.").

Defendants argue that a director's good faith actions in approving a loan, with the belief that he or she is acting in the best interests of the bank, cannot reasonably be characterized as being "so adverse as to practically destroy the relationship." Rather, according to defendants, a director's acts must constitute intentional misconduct, self-dealing, or fraud in order to rise to that level. We do not believe that the principle variously described in *Saratoga* and the *Restatement* is (or should be) so limited.

The "subject matter" to be considered when evaluating the degree of the director's adverse interest is the decision whether to make a claim, not the underlying acts that gave rise to that claim. The culpable directors' interest in bringing a claim against themselves certainly is adverse to that of the corporation. In *Saratoga* terms, at least as to that issue, the agent/principal relationship is nonexistent. Of course, in a corporate mismanagement case, the wrongdoers, who are running the corporation, necessarily possess personal knowledge of the facts that would support a claim against them. Realistically, however, the corporation has neither meaningful knowledge nor the ability to act on such knowledge, until the wrongdoing directors and officers no longer control it. We conclude that knowledge of the wrongdoing directors or officers of facts that would give rise to legal liability to the corporation on the part of those directors or officers will not be imputed to the corporation so long as those directors or officers control the corporation.[6]

Based on the foregoing, we hold that Oregon recognizes the adverse domination doctrine, which is analogous to Oregon's discovery rule in the context of a claim by a corporation against its former directors and officers for their alleged mismanagement of corporate affairs. The question remains whether this court would apply that doctrine to claims of the kind asserted here, *viz.*, negligence, breach of fiduciary duty, and breach of contract.

This court has applied the discovery rule to negligence actions subject to the statutes of limitations expressed

---

[6] We address the issue of when a corporation is deemed to be "controlled" by those individuals in connection with our response to the Ninth Circuit's second question. *See* 328 Or at 431-33.

at ORS 12.110(1) and ORS 12.010.[7] *See, e.g., U.S. Nat'l Bank v. Davies*, 274 Or 663, 669 n 1, 548 P2d 966 (1976) (legal malpractice action governed by ORS 12.110(1) does not accrue under ORS 12.010 until the client becomes aware or should have become aware of the malpractice); *Frohs v. Greene*, 253 Or 1, 452 P2d 564 (1969) (medical malpractice, negligent diagnosis and treatment). By extension, the doctrine of adverse domination also would apply to claims governed by those statutes, *i.e.*, negligence actions. Actions for breach of fiduciary duty are governed, for limitations purposes, by the same limitations provision that applies to negligence actions, *viz.*, ORS 12.110(1). Although this court has not applied the discovery rule specifically in that context, we see no reason to treat the matter differently, especially given the close relationships ordinarily involved and the degree of trust extended to the fiduciary. Accordingly, we also accept the doctrine of adverse domination in that context.

With respect to whether the doctrine of adverse domination applies in the context of a breach of contract action, it does not appear from the facts reported in the Ninth Circuit's certification order, quoted at 328 Or at 423-24, that the issue is presented by this case. RTC succeeded to First Family's assets within six years of the date of the earliest loan that RTC now claims was inappropriate. Oregon's statute of limitations for contract actions is six years. ORS 12.080(1). Thus, the statute had not run on any of RTC's contract claims and RTC had six more years under 12 USC § 1821(d)(14) to bring its contract claims. It has done so. Because the issue proffered by the Ninth Circuit is not presented as to RTC's breach of contract claims, we do not answer it.

We turn to the second certified question:

"If the doctrine of adverse domination does apply to any or all of the mentioned causes of action, what version is applied, the disinterested majority version or the single disinterested director version?"

---

[7] ORS 12.110(1) is quoted at 328 Or at 425 n 3.

ORS 12.010 provides:

"Actions shall only be commenced within the periods prescribed in this chapter, after the cause of action shall have accrued, except where a different limitation is prescribed by statute."

As noted, the "disinterested majority" version of the adverse domination doctrine creates a rebuttable presumption that a corporation does not have a full and fair opportunity to bring claims against its directors during the time that culpable directors constitute a majority of the board. Defendants may overcome that presumption by showing that some person or group had both sufficient knowledge and power to bring an action against the majority of the board. The single disinterested director version, by contrast, places the burden on the corporate plaintiff to show that no one was in a position to bring an action on behalf of the corporation.

■ We conclude that the "disinterested majority" version of the doctrine more closely mirrors human nature. Because a board composed of a majority of culpable directors will rarely, if ever, facilitate the assertion of claims against its members, it is appropriate that those directors bear the burden of proving otherwise. Other courts reaching this conclusion have reasoned similarly:

> "As long as the majority of the board of directors are culpable they may continue to operate the association and control it in an effort to prevent action from being taken against them. While they retain control they can dominate the non-culpable directors and control the most likely sources of information and funding necessary to pursue the rights of the association. As a result, it may be extremely difficult, if not impossible, for the corporation to discover and pursue its rights while the wrongdoers retain control."

*Federal Sav. and Loan Ins. Corp. v. Williams*, 599 F Supp 1184, 1193-94 n 12 (D Md 1984). *See also Resolution Trust Corp. v. Grant*, 901 P2d 807, 818 (Okl 1995); *Hecht v. Resolution Trust*, 333 Md 324, 349-51, 635 A2d 394, 407-08 (Md 1994) (both to the same effect).

Defendants argue that the foregoing approach does not comport with the currently accepted approach to the discovery rule. According to defendants, because

> "Oregon places the burden on the plaintiff to submit facts showing why initiation of the action was delayed based on the discovery rule[,] * * * it follows that a plaintiff trying to delay the statute of limitations on adverse domination

grounds should likewise bear the burden to plead and prove the reason for delay."

Defendants conclude that only the single disinterested director version of the adverse domination doctrine follows that principle. That conclusion, however, is not compelled by defendants' premise: A plaintiff still would be required to plead and prove facts showing that it was adversely dominated, *i.e.*, that the board was composed of a majority of culpable directors, under the disinterested majority version of the adverse domination doctrine.

We conclude that Oregon applies the doctrine of adverse domination to causes of action based on negligence and breach of fiduciary duty. We decline to address whether the doctrine of adverse domination applies to causes of action based on breach of contract. We further conclude that Oregon applies the disinterested majority version of the doctrine in contexts in which it is applicable.

Certified questions answered.