Argued and submitted July 21, 2004, on appeal, contempt order reversed; general judgment on award of punitive damages reversed and remanded with instructions to order new trial on issue of punitive damages with respect to both nuisance and trespass claims; on cross-appeal, general judgment on nuisance claim reversed and remanded; otherwise affirmed May 10, 2006

GRITZBAUGH MAIN STREET
PROPERTIES, LLC;
Fran Gritzbaugh and Kim Gritzbaugh,
*Respondents - Cross-Appellants,*

*v.*

GREYHOUND LINES, INC.,
a Delaware corporation,
*Appellant - Cross-Respondent,*

*and*

Steven BROWN,
dba In Neon, The Sign Store,
*Cross-Respondent,*

*and*

LAIDLAW, INC.,
a foreign corporation,
*Defendant.*

9912-13455; A112213 (Control), A114212
(Cases Consolidated)

135 P3d 345

Brenda K. Baumgart argued the cause for appellant - cross-respondent Greyhound Lines, Inc., and cross-respondent Steven Brown. With her on the briefs were Bradley F. Tellam and Barran Liebman LLP.

David N. Goulder argued the cause for respondents - cross-appellants. With him on the briefs were Richard S. Yugler and Landye Bennett Blumstein LLP.

Before Edmonds, Presiding Judge, and Schuman, Judge, and Deits, Judge pro tempore.

DEITS, J. pro tempore.

Edmonds, P. J., concurring.

**DEITS, J. pro tempore**

This is a consolidated appeal from a contempt order, in which defendant Greyhound Lines, Inc., was found in contempt of a preliminary injunction, and from a general judgment, in which defendants Greyhound and Steven Brown were found liable for trespass. Defendants appeal from the order and judgment. Plaintiffs cross-appeal from the general judgment. We reverse on the contempt order, and reverse and remand on the general judgment.

Plaintiffs are the owners of commercial property on Main Street in downtown Tigard, Oregon. A small building is located on the property. It is separated from the public sidewalk by an asphalt strip that provides access to and away from the building and also provides parking spaces for the building. Two driveways provide ingress and egress to the asphalt strip. At the time that plaintiffs purchased the property in November 1998, the asphalt strip was owned by the City of Tigard. The city eventually agreed to vacate the asphalt strip in October 1999. Plaintiffs' ownership then included the building and all of the area in front of the building, up to the public sidewalk.

At the time that plaintiffs purchased the property, it was leased to Michael and Colleen Leach, who used the property to operate a locksmith business, a sports card and comic shop, and a U-Haul sales office. From 1994 until June 30, 1999, when the lease terminated, the Leaches were also the local ticketing agents for defendant Greyhound Lines, Inc. Greyhound had been providing bus service to Tigard for 25 years and, rather than have a permanent bus stop, it had used a variety of agents and bus stops along and near Main Street. While the Leaches were Greyhound's ticketing agents, their business property was essentially Greyhound's local bus station. Passengers bought tickets inside the building and were given general information from the Leaches regarding the buses, and an area was provided inside the building for passengers to sit while awaiting buses. Passengers received assistance from the Leaches in tagging their luggage and boarded buses in front of the Leaches' property. Shortly after the Leaches became Greyhound's ticketing

agents, the City of Tigard redesigned Main Street and provided a "cut out" in front of the leased property, so that a bus could pull off the street to load and unload passengers and freight onto the sidewalk without backing up traffic. Greyhound's buses loaded and unloaded passengers and freight at the "cut out" and on the asphalt strip between the public sidewalk and the Leaches' building.

When plaintiffs took possession of their property in July 1999, they intended to turn the property into an antique store. However, they discovered that, despite the termination of the Leaches' lease, Greyhound was still using the public areas directly in front of their building as bus stops. Buses stopped at the "cut out" or drove onto the asphalt strip nine to ten times a day, loading and unloading passengers, luggage, and freight. Passengers loitered on the asphalt strip or on the sidewalk in front of plaintiff's property, leaving garbage on the ground. Greyhound customers and people picking up or dropping off bus customers parked their cars in the parking spaces on the asphalt strip in front of plaintiffs' building. Buses and cars blocked the driveways to the asphalt strip.

Plaintiffs complained to Bodie Lyon, the area manager for Greyhound, and he agreed to move the bus stop to a gas station off Main Street. For a few weeks, the buses used the gas station as a bus stop, but eventually returned to the front of plaintiffs' property because Greyhound's new ticket agent, defendant Steven Brown, had a business a few doors down from plaintiffs' property. Brown placed a sign in front of plaintiffs' property stating: "For tickets and freight, see the In Neon Sign store down the street." The buses continued to use the "cut out" and the asphalt strip in front of plaintiffs' property as a bus stop, and sometimes blocked access to plaintiffs' driveways. When plaintiffs placed a barrier in front of their driveways, some buses drove onto the sidewalk in front of plaintiffs' property. Bus customers parked on the asphalt strip, sat on the stoop of plaintiffs' building waiting for buses, and blocked the driveways with their luggage. In January 2000, the City of Tigard moved the bus stop approximately 19 feet from the edge of plaintiffs' property. Nevertheless, buses continued to block plaintiffs' driveway and bus customers continued to park in front of the driveways and on the asphalt strip that was, by then, owned by plaintiffs.

Plaintiffs filed their lawsuit against Greyhound, Laidlaw, Inc., Greyhound's head corporation, and Steven Brown in December 1999, claiming trespass and nuisance, and requesting a preliminary and permanent injunction "restraining defendants from all further use of plaintiffs' premises and adjacent property as a bus station and compelling defendants to relocate its bus station activities to an area that will not interfere with plaintiffs' use and enjoyment of the premises." Plaintiffs also filed a separate motion for an order to show cause why a preliminary injunction, as requested in their complaint, should not be issued.

In March 2000, after hearing testimony and viewing videotapes and pictures of Greyhound's buses and customers on and adjacent to plaintiffs' property, the trial court granted plaintiffs' request for a preliminary injunction. The injunction enjoined defendants "from any and all further use of plaintiffs' premises and adjacent property as a bus station" and compelled Greyhound "to relocate its bus station activities to an area that will not interfere with plaintiffs' use and enjoyment of the premises until and through trial of this action."

Five months later, plaintiffs brought a motion for an order of contempt, alleging that defendants had failed to comply with the preliminary injunction order, in that they continued to use plaintiffs' premises and adjacent property for bus activities. At the contempt hearing, Mrs. Gritzbaugh testified that, although the amount of bus activity had lessened, bus customers continued to park in her driveway and on the asphalt strip, and continued loitering and leaving garbage on her property while waiting for buses. She testified that buses also continued to park in front of their driveway. At the contempt hearing, defendants presented evidence that most buses stopped at the new bus stop several feet from plaintiffs' property, and argued that they were therefore in compliance with the preliminary injunction. The trial court disagreed with defendants' understanding of the requirements of the injunction, finding that the order enjoined bus activities "adjacent to" plaintiffs' property, and the new bus stop adjacent to plaintiffs' property. The trial court found Greyhound to be in willful contempt of its order, but did not

find Brown in contempt. Within 10 days of the trial court's order of contempt, Greyhound, with the City of Tigard's direction, moved its bus stop 200 feet away from plaintiffs' property.

After the contempt order issued, and prior to trial, plaintiffs amended their complaint to include in their prayer for relief a request for punitive damages. Defendants Greyhound and Brown were ultimately found liable, by a jury, for both trespass and nuisance, and were required to pay economic, noneconomic, and punitive damages to plaintiffs on each claim. The trial court also issued an order permanently enjoining all defendants from "establishing a bus stop or engaging in bus station activities within 175 feet of the plaintiffs' premises[.]" After the court entered judgment on plaintiffs' claims, defendants moved for a judgment notwithstanding the verdict (JNOV) on plaintiffs' nuisance claim, which the court granted. The general judgment, from which defendants appeal and plaintiffs cross-appeal, found defendants Greyhound and Brown liable for trespass, and granted economic, noneconomic, and punitive damages on that claim, and restated the permanent injunction against all defendants.[1]

---

[1] Although defendants' initial appeal occurred in 2001, the general judgment from which the parties now appeal and cross-appeal was not entered until August 9, 2005. Some of the length of time between the initial appeal and the appeal from the general judgment arose from the trial court issuing an ORCP 71 A order, after the appeal and cross-appeal had been filed, rendering the entry of its order on defendants' JNOV motion *nunc pro tunc* March 27, 2001, the date that the court signed the order. Plaintiffs had moved to dismiss defendants' appeal on the grounds that the modified money judgment from which defendants appealed was rendered in accordance with the trial court's order granting defendants' JNOV. However, that order was not filed within the 55-day limitation period provided for in ORCP 63 D. Plaintiffs argued that the order was void, and, therefore, the modified money judgment was also invalid. Defendants responded by moving for an ORCP 71 A order correcting the date of the order's entry, which the trial court did. In an order dated October 18, 2001, we denied plaintiffs' motion to dismiss, allowing defendants to move forward with their appeal of the modified money judgment. Plaintiffs sought reconsideration of their motion, and, on February 28, 2002, we affirmed our previous order denying the motion to dismiss. On October 23, 2003, defendants filed a motion to strike plaintiffs' assignments of error pertaining to the trial court's granting of the ORCP 71 A motion, which we granted. Then, on July 19, 2005, we issued an order giving leave to the trial court to enter a judgment disposing of all plaintiffs' claims, including their claim for injunctive relief that had not been previously disposed of in the form of a judgment. On August 9, 2005, the trial court entered the general judgment disposing of all of plaintiffs' claims.

## CONTEMPT ORDER

■ On appeal, defendant Greyhound assigns error to the trial court's finding that Greyhound was in contempt of the preliminary injunction. ORS 33.025(2) (1999), *amended by* Or Laws 2005, ch 22, § 22,[2] governs when a corporation, such as Greyhound, can be held in contempt. It provides, in pertinent part:

"(2) A corporation is liable for contempt if:

"(a) The conduct constituting contempt is engaged in by an agent of the corporation while acting within the scope of employment and on behalf of the corporation;

"(b) The conduct constituting contempt consists of an omission to discharge a specific duty of affirmative performance imposed on corporations by a court; or

"(c) The conduct constituting contempt is engaged in, authorized, solicited, requested, commanded or knowingly tolerated by the board of directors or by a high managerial agent acting within the scope of employment and on behalf of the corporation."

ORS 33.015(2) defines "contempt of court":

"(2) 'Contempt of court' means the following acts, done willfully:

"(a) Misconduct in the presence of the court that interferes with a court proceeding or with the administration of justice, or that impairs the respect due the court;

"(b) Disobedience of, resistance to or obstruction of the court's authority, process, orders or judgments;

"(c) Refusal as a witness to appear, be sworn or answer a question contrary to an order of the court;

"(d) Refusal to produce a record, document or other object contrary to an order of the court; or

"(e) Violation of a statutory provision that specifically subjects the person to the contempt power of the court."

ORS 33.055(11) (1999), *amended by* Or Laws 2005, ch 22, § 24,[3] provides that "[i]n any proceeding for imposition

---

[2] All further references to ORS 33.025(2) are to the 1999 version of the statute.

[3] All further references to ORS 33.055(11) are to the 1999 version of the statute.

of a remedial sanction other than confinement, proof of contempt shall be by clear and convincing evidence." The "clear and convincing" requirement is the standard of proof that governs the plaintiffs' burden of proof and "the degree of certainty which must exist in the mind of the fact finder as to any finding of fact." *Burton v. Bd. of Dental Examiners*, 31 Or App 1045, 1047, 571 P2d 1295 (1977), *rev den*, 282 Or 1 (1978). On appeal, however, we are not to weigh the evidence and determine anew whether there is clear and convincing evidence of contempt; we are only to review whether there is substantial evidence for the factfinder to so find. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994) (explaining similar standard of review for "reasonable doubt" standard of proof); *State ex rel Jiminez and Jiminez*, 55 Or App 221, 223, 637 P2d 928 (1981), *rev den*, 292 Or 568 (1982); *see also June and Golub*, 172 Or App 384, 385, 18 P3d 1107 (2001) ("[O]ur review is for substantial evidence to support the court's findings."). Here, our task is to determine if there is substantial evidence to support the court's findings that there was a violation of the injunction and that it was willful. *Paradis and Keith*, 147 Or App 144, 148, 935 P2d 436 (1997). If the trial court's findings are supported by substantial evidence and the findings support its legal conclusion, we will affirm. *State ex rel Jiminez*, 55 Or App at 223.

■    With that standard of review in mind, we consider the trial court's findings and the evidence in support of those findings. The court found that defendant Greyhound had acted willfully in that it had "intentionally continued to use the adjacent property as a bus station * * * in a manner that interfere[d] with plaintiffs' use and enjoyment of their premises[.]" That a party acted willfully may be established "by proof that a party had knowledge of a valid court order and failed to comply with the order." *State ex rel Mikkelsen v. Hill*, 315 Or 452, 458, 847 P2d 402 (1993). Here, there is sufficient evidence that Greyhound had knowledge of the preliminary injunction, and there is sufficient evidence that Greyhound failed to comply with the injunction. Nevertheless, as Greyhound points out, the evidence also indicates that Lyon and Brown, the only potential agents for Greyhound in this record, had misinterpreted the meaning of the injunction. The preliminary injunction enjoined Greyhound "from any

and all further use of plaintiffs' premises and adjacent property as a bus station[.]" Lyon testified that he understood the preliminary injunction order "to mean that we would have to move our stop from in front of [plaintiffs'] property." He testified that his understanding of the language "adjacent property" did not include Greyhound's bus stop 19 feet from plaintiffs' property. Thus, Lyon believed that Greyhound was in compliance with the injunction as long as Greyhound's buses used the new bus stop and did not stop directly in front of plaintiffs' property. Brown testified that he informed all the bus drivers to park at the new bus stop and told customers to park in public parking only. In making its determination that Greyhound acted intentionally, the trial court specifically found that neither Lyon nor Brown intentionally violated the injunction and that finding is not challenged here. The court explained:

> "The question really in this case is whether Greyhound complied with the preliminary injunction. I'm satisfied by very clear and convincing evidence that they have not complied and that they are in contempt of court.
>
> "Mr. Brown, on the other hand, I would not find to be in contempt of court because I think he has made a genuine effort to try to educate his customers that they're to stay away from the Gritzbaughs' property. But Greyhound, in my opinion, has not complied with the preliminary injunction.
>
> "The language reads that 'Greyhound is enjoined from any and all further use of plaintiffs' premises and adjacent property as a bus station and compelled to relocate its bus station activities to an area that will not interfere with plaintiffs' use and enjoyment of the premises until and through trial of this action.' That has not been accomplished.
>
> "And I don't—I'm not personally attacking Mr. Lyon. His interpretation, I think, is probably reasonable in terms of his just general understanding of court proceedings. He's not a lawyer and I would not hold him personally in contempt of court in the circumstances of this case, but the corporation admittedly acts through him perhaps and others and has not complied with the preliminary injunction.

"The word adjacent means things like close to or next to or adjoining or contiguous or bordering, and this second bus stop that was worked out even before the preliminary injunction is contiguous and it is bordering and it is close to and it is next to and it is adjoining the plaintiffs' property. It has not been moved. That's a violation. That's contempt of court."

Greyhound argues that the court's finding that Greyhound acted intentionally is not legally supportable, in light of the fact that the court found no intentional conduct by Greyhound's only potential agents in this case, Lyon and Brown. It argues that under ORS 33.025(2)(a), Greyhound could not be found in contempt if its agents did not willfully disobey the injunction. Plaintiffs counter that ORS 33.025(2)(a) does not require that the agents act willfully.

■    We agree with defendants that the text and context of ORS 33.025(2)(a) make it clear that the legislature intended that a corporation could be held in contempt under that particular subsection only if its agents willfully disobeyed the court's order. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993) (court's task is to interpret the legislature's intent in enacting a statute by first considering the statute's text and context). ORS 33.025(2)(a) provides that a corporation can be held in contempt if "[t]he conduct constituting contempt is engaged in by an agent of the corporation * * *." ORS 33.015 defines what conduct constitutes contempt and requires that the conduct be done willfully. Thus, "[d]isobedience of * * * the court's * * * orders" constitutes contempt only if it is done willfully. ORS 33.015(2)(b). Applying that to ORS 33.025(2)(a), a corporation is in contempt if conduct constituting contempt, *i.e.*, willful disobedience of a court order, "is engaged in by an agent of the corporation." The meaning is clear if we place that language in active voice. A corporation is in contempt if an agent of the corporation, while acting within the scope of employment and on behalf of the corporation, engages in willful disobedience of the court's order.

As noted above, the record in this case indicates only two possible agents for Greyhound—Lyon and Brown—and the trial court specifically found that neither of them acted

intentionally in violating the injunction.[4] Consequently, the court's factual findings do not support its legal conclusion that the corporation was in contempt under ORS 33.025(2)(a).

■ Plaintiffs also argue that the trial court could have held Greyhound in contempt under ORS 33.025(2)(b). Paragraph (b) allows a corporation to be held in contempt if the willful conduct "consists of an omission to discharge a specific duty of affirmative performance imposed on corporations by a court." As noted above, the preliminary injunction provided that

> "Greyhound Bus Lines, Inc., Laidlaw, Inc., and Steven Brown are hereby enjoined from any and all further use of plaintiffs' premises and adjacent property as a bus station and compelled to relocate its bus station activities to an area that will not interfere with plaintiffs' use and enjoyment of the premises until and through trial of this action."

Plaintiffs argue that the provisions of the injunction requiring Greyhound to "relocate its bus station activities," placed an affirmative obligation and duty on Greyhound to relocate its business activities and that its failure to do so brings their conduct within ORS 33.025(2)(b).

We disagree with plaintiffs. The language of that portion of the trial court's order is not entirely clear. It does provide that Greyhound is to relocate its business. However, unquestionably, the main purpose of the order was to enjoin defendants from using plaintiffs' property or the property adjacent to plaintiffs as a bus station. If the court had truly intended the relocation language to place an affirmative duty on defendants to move their business activities, that would mean that defendants would potentially have been in contempt if defendants had ceased using plaintiffs' property and

---

[4] The trial court's finding regarding Lyon was that his interpretation of "adjacent" was not unreasonable. That finding necessarily implies that the trial court believed Lyon's testimony that he had interpreted the preliminary injunction differently from the way the court had intended. Because Lyon misinterpreted the injunction, he could not have willfully violated it. *See State ex rel Oregon State Bar v. Wright*, 280 Or 713, 720, 573 P2d 294 (1977) (concluding that the defendant could not be held in contempt where evidence indicated that he had not clearly understood the injunction).

the adjacent property as a bus station, but had failed to relocate the business; *i.e.*, they had decided simply not to provide bus service to that area of Tigard. That does not appear to be the court's intention. Considering the language and overall purpose of the injunction, whether a relocation occurred was pertinent only to the extent that it showed that Greyhound had ceased its business activities on plaintiffs' property and adjacent property. Under the language of the injunction, Greyhound did not have an independent affirmative obligation to relocate its business so long as it ceased business activities on plaintiffs' property and adjacent property. Thus, defendants' alleged contempt could not be based on the failure to follow an affirmative obligation and, accordingly, defendants did not engage in contempt under ORS 33.025(2)(b).

Furthermore, even assuming that the court order created a duty of affirmative performance, paragraph (2)(b) states that the omission of that duty is "conduct constituting contempt." In other words, as with paragraph (2)(a), the corporation cannot have violated paragraph (2)(b) unless the omission constituted willful disobedience of the court's order. We have said that a corporation can act only through its officers and agents and, further, that a corporation can have knowledge of something only through its officers and agents. *See Doe v. Oregon Conference of Seventh-Day Adventists*, 199 Or App 319, 326, 111 P3d 791 (2005) (citing *State v. Oregon City Elks*, 17 Or App 124, 130, 520 P2d 900 (1974), and *FDIC v. Smith*, 328 Or 420, 429, 980 P2d 141 (1999)). It follows that a corporation cannot willfully disobey a court order unless it does so through its officers and agents. Thus, in light of the fact that this record shows only Lyon and Brown to be potential agents for Greyhound, and the fact that the court specifically found that neither of those potential agents acted intentionally in disobeying the order, there is not substantial evidence that Greyhound willfully disobeyed a duty of affirmative performance under the court order.

Plaintiffs argue alternatively that Greyhound could be found in contempt under ORS 33.025(2)(c). ORS 33.025(2)(c) allows a corporation to be held in contempt if the willful conduct "is engaged in, authorized, solicited, requested, commanded or knowingly tolerated by the board

of directors or by a high managerial agent acting within the scope of employment and on behalf of the corporation." However, there is no evidence in this record regarding Greyhound's board of directors, nor is there evidence indicating that Lyon or Brown, the only potential agents for Greyhound found in the record, were "high managerial agent[s]" at Greyhound. Accordingly, ORS 33.025(2)(c) does not apply to the facts of this case. Because the trial court's factual findings regarding the agents' conduct do not support its legal conclusion that Greyhound's actions constituted contempt under ORS 33.025(2), we conclude that the court erred in finding Greyhound in contempt.

## THE GENERAL JUDGMENT

■■ Defendants' only other assignment of error arises from their appeal of the general judgment in which they were found liable for trespass. Defendants assign error to the trial court's allowance of the admission of evidence pertaining to the order of contempt. After the court allowed plaintiffs to amend their complaint to include a prayer for punitive damages, defendants filed a motion *in limine* seeking an order excluding evidence of the preliminary injunction order and the contempt order, on the basis that such evidence was unfairly prejudicial to defendants. The court ultimately allowed plaintiffs to offer evidence of the preliminary injunction and evidence that a court had found that Greyhound was in willful violation of the injunction. Specifically, the court allowed plaintiffs' counsel to recite the specific wording of the preliminary injunction and that portion of the contempt order that stated "it is hereby ordered, adjudged and decreed that [Greyhound] is in intentional violation of the [preliminary injunction]." Because we have concluded that the order of contempt was invalid, it follows that the admission of any evidence pertaining to the contempt order was, at the very least, irrelevant to any issue before the jury. OEC 401.[5] The only question remaining is whether the admission of the invalid contempt order "affected a substantial right" of defendants. ORS 19.415(2); OEC 103(1); *Shoup v. Wal-Mart*

---

[5] " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401.

*Stores, Inc.*, 335 Or 164, 174, 61 P3d 928 (2003). If the admission of the evidence had some "likelihood of affecting the jury's result," reversal is required. *Cunningham v. Montgomery*, 143 Or App 171, 181, 921 P2d 1355, *rev den*, 324 Or 487 (1996).

We conclude that this evidence did, in all likelihood, affect the jury's result. ORS 31.730 sets out the standard for recovery of punitive damages in a civil action. It provides, in pertinent part:

> "(1) Punitive damages are not recoverable in a civil action unless it is proven by clear and convincing evidence that the party against whom punitive damages are sought has acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others."

In this case, the only basis on which plaintiffs could recover punitive damages is by proof of malice on Greyhound's part. Plaintiffs offered evidence that a court had ordered Greyhound to cease "any and all further use of plaintiff's premises and adjacent property as a bus station" and that the court thereafter had found and judged that Greyhound was "in *intentional* violation" of the court's order.[6] That evidence not only spoke directly to the issue of malice, but did so with the added imprimatur of the court. It may be true, as plaintiffs argue, that there was other evidence that supported the contempt court's conclusion that Greyhound acted intentionally, but none of the other evidence bore the trial court's stamp of approval. Such evidence likely affected the jury's determination that defendants had acted with malice. We therefore conclude that the jury award of punitive damages

---

[6] Plaintiffs suggest that defendants are, in part, responsible for the admission of the language of the contempt order because (1) defendants had raised defenses that left plaintiffs with no choice but to offer evidence of why defendants had moved their bus stop 200 feet away from plaintiffs' property, and (2) defendants asked for the exact language of the contempt order to be offered into evidence. Plaintiffs' former argument fails, because it was plaintiffs, and not defendants, who offered the initial evidence that defendants had moved their bus stop to the farther location. But for plaintiffs' offered evidence regarding defendants' move, there would have been no reason to provide an explanation as to why defendants had moved. As to plaintiffs' latter argument, we do not agree that defendants asked for the entire order to be offered into evidence.

must be reversed and remanded for a new trial. *See Brown v. Boise-Cascade Corp.*, 150 Or App 391, 420, 946 P2d 324 (1997), *rev den*, 327 Or 317 (1998).

■ We next address plaintiffs' assignments of error on their cross-appeal. Plaintiffs first assign error to the trial court's order granting defendants' motion for JNOV, ORCP 63, on plaintiffs' claim for nuisance. Plaintiffs argue that the court lacked authority to grant the JNOV because defendants did not move for a directed verdict, pursuant to ORCP 60, before the claims went to the jury. Defendants argue that they did not need to move for a directed verdict, because the trial court raised the issue of the sufficiency of plaintiffs' evidence *sua sponte* and, therefore, the court engaged in the process contemplated by ORCP 60 and ORCP 63 and had authority to grant the JNOV.

The facts regarding the trial court's order granting the JNOV are as follows: After the close of evidence, plaintiffs moved for a directed verdict on their nuisance claim. The court denied that motion, and questioned plaintiffs as to whether plaintiffs had sufficient evidence to even support a nuisance claim. After a colloquy between the court and plaintiffs' counsel about the evidence and plaintiffs' theory of nuisance, the court stated that it would not enter a judgment in favor of plaintiffs on their claim for nuisance. Plaintiffs requested that the claim nevertheless be given to the jury, in order to protect their record on appeal, and the court agreed. When the jury returned a verdict in favor of plaintiffs on the nuisance claim, defendants moved for a JNOV on that claim, which the court granted. Defendants never moved for a directed verdict before the claims went to the jury.

■ ORCP 63 governs the process by which a trial court may grant a JNOV. It states, in part:

> "A   Grounds. When a motion for a directed verdict, made at the close of all the evidence, which should have been granted has been refused and a verdict is rendered against the applicant, the court may, on motion, render a judgment notwithstanding the verdict, or set aside any judgment which may have been entered and render another judgment, as the case may require.

"B  Reserving ruling on directed verdict motion. In any case where, in the opinion of the court, a motion for a directed verdict ought to be granted, it may nevertheless, at the request of the adverse party, submit the case to the jury with leave to the moving party to move for judgment in such party's favor if the verdict is otherwise than as would have been directed or if the jury cannot agree on a verdict."

The general rule is that "[t]he refusal of a motion for a directed verdict is a condition precedent to the exercise of the court's power to render a judgment n.o.v." *Stark v. Henneman*, 250 Or 34, 36, 440 P2d 364 (1968). Plaintiffs argue that defendants failed to make a motion for a directed verdict; therefore, the prerequisite for the court's authority to grant a JNOV was not met. Defendants argue that when the court *sua sponte* raised the issues regarding the sufficiency of plaintiffs' evidence for their nuisance claim, the *substance* of a motion for directed verdict was present; therefore, the trial court had authority to grant a JNOV.

We agree with plaintiffs that the plain meaning of ORCP 63 indicates that the legislature intended that the party against whom a verdict is rendered, and not the trial court on its own motion, must make a motion for a directed verdict as a prerequisite to the motion and order for a JNOV. *PGE*, 317 Or at 610-11. The legislature provides for a JNOV "[w]hen a motion for a directed verdict * * * which should have been granted has been refused[.]" ORCP 63 A. Only the court can do the granting or refusing of such a motion, and a court would not need to grant or refuse its own motion. It therefore follows that, under the language of the statute, the party against whom the verdict is rendered must have moved for the directed verdict. When the legislature intends for a court to be able to raise an issue *sua sponte*, it usually specifically so provides. For example, there are many statutory provisions that include the language, "the court, on its own motion," or similar language. *See, e.g.*, ORCP 64 G ("If a new trial is granted by *the court on its own initiative*, the order shall so state and shall be made within 30 days after the entry of the judgment." (Emphasis added.)); ORCP 71 A ("Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time *on its own motion*

or on the motion of any party[.]" (Emphasis added.)); ORS 19.235 (granting trial court authority to raise *"on its own motion"* the issue of whether a decision is appealable (emphasis added)); ORS 138.083(1) (the sentencing court retains authority to "correct * * * clerical errors * * * in the judgment * * * either on the motion of one of the parties or *on the court's own motion"* (emphasis added)). Accordingly, we conclude that the legislature intended that the party against whom the verdict is rendered, and not the trial court, should have brought the directed verdict motion for purposes of granting a JNOV under ORCP 63.

Defendants argue that, regardless of whether the trial court *sua sponte* raised the directed verdict issue, the purposes of a directed verdict were met, and, therefore, the trial court had authority under ORCP 63 A to grant the JNOV. Defendants argue that the colloquy between the trial court and plaintiffs' counsel indicates that the sufficiency of the nuisance evidence was clearly and adequately discussed. Consequently, the parties and the trial court engaged in what was the equivalent of a discussion about whether a directed verdict should be granted. Defendants argue that to find that the JNOV was invalid simply because defendants failed to state, "Your honor, defendants move for a directed verdict," elevates form over substance. That argument fails to recognize our responsibility in reviewing whether a provision was followed. Under the applicable template, we are bound by the plain meaning of a provision. The plain meaning of ORCP 63 A requires that the party against whom a verdict is rendered must have first made a motion for a directed verdict. Defendants did not do that.[7] The trial court erred in granting the JNOV on plaintiffs' nuisance claim.

---

[7] We recognize that both this court and the Oregon Supreme Court have upheld the validity of some JNOVs, even where the party against whom the verdict was rendered had failed to make a motion for a directed verdict. *See Becker v. Pearson,* 241 Or 215, 222, 405 P2d 534 (1965) (a request for a jury instruction that the jury return a certain verdict was the equivalent of a motion for a directed verdict; therefore, trial court had authority to grant JNOV); *Owens v. Haug,* 61 Or App 513, 516, 658 P2d 523, *rev den,* 294 Or 792 (1983) (the defendant's motion at the close of evidence to strike allegations of lost wages and her objection to a modified verdict form were sufficient to later grant the defendant's motion for JNOV, even though the defendant never labeled her objections as directed verdict motions); *Crooks v. Payless Drug Stores,* 285 Or 481, 486, 592 P2d 196 (1979) (motion to strike allegation of punitive damages and to strike requested jury instruction on

On appeal, contempt order reversed; general judgment on award of punitive damages reversed and remanded with instructions to order new trial on issue of punitive damages with respect to both nuisance and trespass claims; on cross-appeal, general judgment on nuisance claim reversed and remanded; otherwise affirmed.

**EDMONDS, P. J.,** concurring.

I agree with the majority's resolution of the issues before us. I write separately because I believe the majority incorrectly applies the language of ORS 33.025(2)(b) (1999) to this case.

ORS 33.025(2)(b) provides that a corporation is liable for contempt if "[t]he conduct constituting contempt consists of an omission to discharge a specific duty of affirmative performance imposed on corporations by a court[.]" The judgment that enjoined defendants provides,

"[Defendants] are hereby enjoined from any and all further use of plaintiffs' premises as a bus station and compelled to relocate its bus station activities to an area that will not interfere with plaintiffs' use and enjoyment of the premises[.]"

The majority reasons,

"Under the language of the injunction, Greyhound did not have an independent affirmative obligation to relocate its business so long as it ceased business activities on plaintiffs' property and adjacent property. Thus, defendant's alleged contempt could not be based on the failure to follow an affirmative obligation and, accordingly, defendants did not engage in contempt under ORS 33.025(2)(b)."

205 Or App at 652.

I disagree with the majority's assertion that defendants did not have an obligation under the injunction "to discharge a specific duty of affirmative performance." In issuing the injunction, the trial court found,

---

punitive damages was sufficient for court to grant motion for JNOV). In each of those cases, the party made some motion or objection that we concluded was the equivalent of a motion for a directed verdict. In contrast, defendants in this case did nothing prior to their motion for JNOV to advance an argument that they were entitled to a verdict in their favor.

"After July 1, 1999, and repeatedly through the above date of hearing, the defendants have continued to trespass upon and use the premises and adjacent property for loading and unloading of passengers, freight, and luggage, for bus turnaround, passenger parking, waiting, waste disposal, loitering, and other activities incidental to transportation and its common carrier business."

Based on that finding, Greyhound was charged by the court under the language of the injunction with a specific duty that required an act of affirmative performance on its part, *i.e.*, to move the bus stop from its existing location to a location that was not on plaintiff's property or adjacent property. Although it is correct in the abstract that Greyhound could have complied with the provisions of the injunction by ceasing its business activities on plaintiffs' property and the adjacent property, that is not what occurred. Greyhound merely moved its business location to adjacent property, approximately 19 feet away from plaintiffs' property. That action put it in violation of the injunction's specific duty to affirmatively move its business activities from adjacent property if it continued to do business in the vicinity and potentially put it in contempt of the court's injunction. Unlike the majority, I would hold that Greyhound's action, based on the above facts, is governed by ORS 33.025(2)(b).

The question then becomes whether Greyhound's action to relocate its bus stop is subject to the sanction of contempt as defined by statute. As the majority points out, the definition of "contempt of court" in ORS 33.015(2) includes the disobedience of a court's judgment, if committed "willfully." The present statute does not define the word "willfully." However, by the insertion of the word "willfully" into the statute, the legislature appears to have codified existing case law, which has long recognized the requirement of "willfulness" before a contempt sanction could be imposed. *See, e.g., Couey and Couey*, 312 Or 302, 304, 821 P2d 1086 (1991).

For purposes of that case law, which now appears to have been codified, a "willful" mental state may be established for purposes of a *prima facie* case by proving that a party had knowledge of a valid court order and failed to comply with that order. *State ex rel Mikkelsen v. Hill*, 315 Or 452,

458, 847 P2d 402 (1993). However, when the issue is the sufficiency of the evidence, a corollary principle under the case law is that a good faith effort to comply with the judgment is a defense to a contempt charge. *See, e.g., State ex rel Oregon State Bar v. Wright*, 280 Or 713, 715, 573 P2d 294 (1977) (holding that punishment for civil contempt should be restricted to cases in which the violation of a court order is with "bad intent"). Thus, in determining whether a person has acted in willful disobedience of a court judgment, a trial court may properly take into account the circumstances that led the person to disobey the judgment. *See, e.g., State ex rel Sahlstrom v. Malos*, 245 Or 598, 600, 422 P2d 580 (1967) (holding that, although the defendant's subsequent conduct was a violation of the court's judgment, the fact that she received legal advice that the activity engaged in was not a violation was part of the evidence to be considered in determining whether her conduct was "willful"). I conclude that the legislature's codification of the word "willful" into the statute without any restriction was intended to codify all of the above common-law principles.

That understanding has relevance to this case in which the trial court found that Greyhound's agents believed in good faith that they were in compliance with the injunction when they moved the bus stop from plaintiffs' premises. In light of those findings, I agree with the majority that, under a sufficiency of the evidence standard of review, there is not substantial evidence to find Greyhound in contempt of court, even though I would hold that its actions violated the provisions of the preliminary judgment. I would only add that ORS 33.025(2)(b) presents a trap for the unwary. While ORS 33.025(2)(a) and ORS 33.025(2)(c) expressly refer to contempt sanctions for corporations that arise from the imputation of acts of corporate agents, subsection (b) of the statute addresses the circumstance where the corporation itself is the subject of the directive of the judgment. Nonetheless, because of the requirement of ORS 33.015(2) that the enumerated acts be done "willfully," it is not enough under the statutory scheme to demonstrate merely that a corporation violated the provisions of a judgment.