[Civ. No. 3846.   Fourth Dist.   Dec. 13, 1948.]

THEODORE R. COOMBER, Plaintiff and Appellant, v. RICHARD C. JEWETT et al., Respondents; TROY L. COLBOCH et al., Defendants and Appellants.

Theodore R. Coomber, in pro. per., for Appellants.

Harold A. McCabe for Respondents.

BARNARD, P. J.—This action involves the possession and ownership of four buildings located on the Fullerton Municipal Airport, which are personal property.

In November, 1939, Mrs. Blazier obtained a bill of sale to two of these buildings from one James. James' connection with the buildings in no way appears, and there is no evidence that he had any interest or title which he could convey. At that time Colboch was in possession of the buildings and operating the property under a lease from the city. Shortly thereafter, two other buildings were built by Colboch, apparently with the help of funds furnished by Mrs. Blazier. On April 19, 1940, Colboch gave a bill of sale to one building on this airport to Mrs. Blazier. She made no attempt to take possession of the buildings and Colboch continued in possession, operating under his lease. In July, 1942, Colboch gave another bill of sale covering two buildings to Mrs. Blazier. She recorded her three bills of sale on August 17, 1942.

On December 9, 1943, Colboch gave a bill of sale to all four buildings to the Jewetts, which was recorded on December 16, 1943. At that time, these parties agreed that they would later enter into a profit-sharing agreement for the operation of a business from these buildings. The Jewetts took possession of the property, paying substantial amounts, including back rent owed by Colboch. Colboch's lease was cancelled and the Jewetts obtained a new lease from the city and thereafter operated the property, employing Colboch on a salary as manager. About a year later, the Jewetts learned that a bill of sale had in the past been given to Mrs. Blazier. They asked Colboch about this and he assured them that while he had at one time given a bill of sale to Mrs. Blazier he had obtained a bill of sale back from her, which he had in his possession.

On October 13, 1945, the Jewetts and Colboch signed a written agreement. terminating their relationship, stating that it was a complete settlement between them, and that Colboch released and transferred all of his interest in the business and buildings to the Jewetts. The contemplated partnership agreement between them had never been executed. Colboch testified that he told the Jewetts in December, 1943, that he would give them clear title to these buildings and that he did not tell them until after their settlement on October 13, 1945, that he could not get a bill of sale back from Mrs. Blazier until he settled with her.

On December 19, 1945, Coomber obtained a lease for these buildings from Mrs. Blazier. He then brought this action in claim and delivery for possession of the buildings. The Jewetts answered and filed a cross-complaint seeking to quiet

their title to the buildings as against Coomber, Colboch and Mrs. Blazier.

The court found that Colboch had been in exclusive possession of the buildings, claiming ownership, since prior to April 1, 1940; that on December 9, 1943, while in exclusive possession and control and claiming ownership, he sold the same for a valuable consideration to the Jewetts, giving them a bill of sale, and the Jewetts immediately took exclusive possession and control which they have continuously maintained since that date; that Mrs. Blazier was never given possession or control of the property by Colboch and at no time did she take possession or control; that the Jewetts first had actual notice that she claimed any interest in the property after October 13, 1945; that the plaintiff Coomber knew when he took a lease from her that the Jewetts claimed to be and were the owners of this personal property; that he acquired his purported lease with the intent to bring suit thereon; and that the purported bills of sale from Colboch to Blazier did not establish or create any interest in the property adverse to the interests of the Jewetts. Judgment was entered quieting title in this personal property in the Jewetts as against Coomber, Colboch and Blazier, and these parties have appealed.

The sole contention here made is that the findings are not supported by the evidence. The essential facts appear practically without dispute. It is argued, however, that the Jewetts paid no consideration to Colboch for these buildings and that they did not take possession, in legal effect, because for a time they retained Colboch as manager. There is ample evidence of a large consideration paid, and the finding of a change of possession has sufficient evidentiary support.

The controlling question raised is as to the sufficiency of the finding or conclusion that the purported bills of sale from Colboch to Blazier did not create any interest in this property adverse to the claims of the Jewetts.

Colboch had conveyed all of his interest in these buildings to the Jewetts, as further fully confirmed in writing on October 13, 1945. The rights of Coomber depend entirely on those of Mrs. Blazier, which present the controlling question. She took bills of sale in 1939 and 1940 and again in 1942, without interfering with Colboch's possession in any way. She permitted undisturbed possession and control to remain in Colboch for about three years, and thereafter permitted the Jewetts to remain in possession under claim of ownership for another two years, without in any way asserting or making known her

claim of interest in the property. The Jewetts purchased the property for a valuable consideration from a man who had long been in possession and claiming ownership, and without any actual notice of Mrs. Blazier's claim. The recording of the bills of sale was not sufficient to constitute constructive notice under these circumstances.

Mrs. Blazier testified that she made no attempt to take possession of the property but permitted Colboch to operate as he had done before; that he was greatly indebted to her when she took the bill of sale from him in 1940; that at the time she took this bill of sale she also had him execute promissory notes to her covering this indebtedness; that in July, 1942, she took new notes for the same debt and took a new bill of sale; that she was still holding these notes; and that while she and Colboch had recently agreed to settle their debt by entering a judgment for a certain amount, and by the making of monthly payments thereon, Colboch had refused to execute the necessary papers. The evidence justifies the inference that Mrs. Blazier took these bills of sale as security only and that it was never intended by the parties thereto to transfer the ownership of the property to her.

It is unnecessary to discuss the further question as to whether section 3440 of the Civil Code is applicable to the sale of such personal property as that here involved. In any event, on the only material question here raised, the evidence supports the controlling finding and conclusion that the purported bills of sale from Colboch to Blazier did not establish or create any interest in the property which was adverse to the ownership thereof by the Jewetts. The evidence supports the essential findings which adequately support the judgment.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.