Argued and submitted January 6, affirmed April 27, 2005

Jane DOE,
Guardian Ad Litem for Janey Doe,
*Respondent,*

*and*

Jane DOE,
individually,
*Plaintiff,*

*v.*

OREGON CONFERENCE
OF SEVENTH-DAY ADVENTISTS,
an assumed business name of the Western Oregon
Conference Association of Seventh-Day Adventists,
an Oregon corporation,
*Appellant.*

00C-11876; A120240

111 P3d 791

Ridgway K. Foley, Jr. argued the cause for appellant. With him on the opening brief were Ridgway K. Foley, Jr., P.C., and Greene & Markley, P.C.

Jeffrey M. Batchelor argued the cause for respondent. With him on the brief were Jennifer H. Holcomb, David W. Melville, and Markowitz, Herbold, Glade & Mehlhaf, PC, and William A. Barton, Kevin K. Strever, and Barton & Strever, PC.

Before Wollheim, Presiding Judge, and Schuman and Edmonds,* Judges.

SCHUMAN, J.

---

* Edmonds, J., *vice* Ceniceros, S. J.

## SCHUMAN, J.

In this negligence action, plaintiff is the mother and guardian *ad litem* of a minor, Janey Doe. At the age of five, Janey was touched in a sexual manner on several occasions by A, the 11-year-old son of plaintiff's pastor, Dennis Pumford. Plaintiff sued Pumford's employer, the Oregon Conference of Seventh-Day Adventists (defendant or the Conference), alleging that it knew or had reason to know of A's sexual proclivities and, for that reason, it was negligent in not requiring Pumford to supervise his son and in not warning elders in the congregation to which they transferred Pumford (and of which plaintiff was a member). The jury returned a verdict in favor of plaintiff for $2 million. The Conference appeals, assigning error to the trial court's refusal to direct a verdict in its favor, to its refusal to give two proffered instructions, and to its decision to give one of plaintiff's jury instructions. We affirm.

At trial, plaintiff presented evidence that, before transferring Pumford from a congregation in Washington to plaintiff's church in Salem, the Conference, through its agents, was aware that Pumford's son had claimed to be sexually active and had directed his sexual interest to at least one girl in the Washington parish. Specifically, plaintiff introduced into evidence a letter to Pumford from Senior Pastor Silvestri, Pumford's supervisor in Washington, in which Silvestri reported that he had learned from his own son that Pumford's son claimed to know about sex, claimed to have had sex with a girl under a table, described acts that Silvestri described in the letter as "foreplay," and told younger boys that he wanted to "smother" B, a female child parishioner, "with his body and kiss her." In his letter to Pumford, Silvestri also stated that A exhibited a "distorted view of sex" that "is not a little issue." Silvestri wrote (and, consequently, Pumford read) that A's statements about sex caused Silvestri and his wife to "explain the right way to view girls" and provide "appropriate info about the birds and the bees," emphasizing that it was "unfortunate" that he was forced to educate his son about those things at an early age.

In addition to notifying Pumford, Silvestri also warned the mother of the parish girl whom A reportedly

wanted to "smother" and "kiss" to "keep an eye open" in light of A's statements. Silvestri's wife told another woman, Carleen Will, about the incident described in the letter, and Will in turn called Kathy Corwin, the secretary in the Family Life Department at Conference headquarters, to warn her about A's misbehavior. At trial, Corwin testified that any of the reports concerning A in Silvestri's letter would have served as "red flags" sufficient to prompt a report to civil authorities. Plaintiff also presented evidence that it was within the scope of church officials' duties to evaluate information concerning potential sexual threats and that a Seventh-Day Adventist pastor is "a pastor 24 hours a day."

Although agents of the Conference—Pumford and Silvestri—knew of A's claims and his "distorted view" of sex, and Silvestri was concerned enough to warn B's mother about A, the Conference appointed Pumford to a position in Salem without warning the elders of the community or requiring Pumford to supervise A around child parishioners. The Conference does not dispute that, during Pumford's tenure at the Salem church, A sexually touched Janey on multiple occasions.

Plaintiff brought this action in January 2001, asserting that the Conference was negligent

"in one or more of the following particulars, which were a cause of Plaintiff's injuries:

"a. In failing to adequately supervise Pastor Pumford's son;

"b. In failing to require Pastor Pumford to supervise his son when his son accompanied him on Pastoral activities;

"c. In failing to warn church members of the sexual acts and threats of sexual acts that Pastor Pumford's son had previously made regarding the female children, including children of church members;

"d. In transferring Assistant Pastor Pumford to Salem without notifying the members in Salem of the acts and threatened acts of his son;

"e. In transferring Assistant Pastor Pumford to Salem without notifying the elders in Salem of the acts and threatened acts of his son; and

"f. In failing to require that Assistant Pastor Pumford supervise his son while in the company of young females attending Defendant's churches."

Only "particulars" b, e, and f survived the Conference's motion for summary judgment and were tried to a jury, which returned a verdict in plaintiff's favor. The Conference now appeals.

The Conference first assigns error to the trial court's denial of two of the requested jury instructions. The first stated:

"In order to prevail on her claims against the defendant, the plaintiff must prove that the defendant had actual or constructive knowledge or notice that [A] was a danger. The Conference obtains knowledge only through its employees. In order to find against the Conference, you must find that one or more Conference employees had actual knowledge or notice that [A] was a danger, that such knowledge related to the subject matter of the employment, and that the employee acquired the knowledge while acting within the scope of his or her authority.

"There are exceptions to the rule: If an agent has an interest that is adverse to his principal, any knowledge that he may have acquired from a third party cannot be imputed to the principal."

The second requested instruction stated:

"Except where the agent is acting adversely to the principal, the principal is affected by the knowledge which an agent has a duty to disclose to the principal or to another agent of the principal, to the same extent as if the principal had the information."

According to the Conference, Pumford, an agent, had an interest in concealing A's sexual proclivities in order to protect his own career. That interest was adverse to the Conference's interest in protecting its child parishioner from harm. The Conference argues that its proposed jury instruction would have allowed jurors to reach the same conclusion

and, on that basis, require them not to impute Pumford's knowledge. Plaintiff responds that the proposed instruction misstates the law, would have provided the jury with inadequate guidance as to what "adverse" means, and, in any event, would not have been appropriate because an agent's interest is "adverse" to the principal's only in very narrow circumstances, such as when the adversity " '*practically destroy[s] the relationship*' " or when the agent is " 'secretly engaged in attempting to accomplish a fraud which would be defeated by a disclosure to his principal.' " *FDIC v. Smith*, 328 Or 420, 429, 980 P2d 141 (1999) (quoting *Saratoga Inv. Co. v. Kern*, 76 Or 243, 254, 148 P 1125 (1915)) (emphasis added in *FDIC*).

■ We need not address those contentions, however, because failure to give the instruction would not have changed the outcome of the case. The Conference's objective in proposing the instruction was, as noted above, to prevent the jury from finding that the Conference possessed the factual knowledge that Pumford had about A. But Pumford's knowledge was secondhand; it came from Silvestri's letter, and Silvestri, too, was indisputably a Conference employee. The Conference does not and could not argue that Silvestri had an adverse interest. Thus, even if Pumford's ability to impute knowledge to the Conference had been eliminated by the proposed "adverse interest" instruction, the Conference would have had the same imputed knowledge from its original source, Silvestri. If there was error, it was harmless and could not support reversal. ORS 19.415(2).

The Conference also assigns error to the trial court's denial of two motions to direct a verdict in its favor. The first motion was based on the ground that "the evidence is insufficient to establish that the Conference had actual knowledge of any prior bad acts of its employee's son. Therefore, under Oregon law, the Conference had no duty to require its employee to supervise his own child and no duty to warn." In its second motion, the Conference stated that

> "Oregon law does not allow an action against an employer or a principal for negligent supervision of its employee or agent or person in their charge in the absence of actual notice to the employer of similar and prior bad acts of the employee * * * [and here] there is no evidence of actual knowledge of prior bad acts[.]"

Because both motions depend on the assertion that the Conference lacked the knowledge necessary to incur liability and that, without that knowledge, the Conference had "no duty" to plaintiff, we discuss the assignments of error in a single analysis.

We note at the outset that the Conference misunderstands the gravamen of plaintiff's claims. Plaintiff did not allege (as stated in the Conference's second motion) that the Conference negligently supervised Pumford. Rather, plaintiff alleged that the Conference was negligent in "failing to require [Pumford] to supervise his son when his son accompanied him on Pastoral activities"; "failing to require that [Pumford] supervise his son while in the company of young females attending Defendant's churches"; and "transferring [Pumford] to Salem without notifying the elders in Salem of the acts and threatened acts of his son." We refer to the first two allegations as "failure to require supervision" and to the third as "failure to warn."

According to plaintiff, the conduct of the Conference with respect to each specification was unreasonable in light of the fact that it knew that A's sexual proclivities put other child parishioners at risk. Plaintiff correctly asserts that the Conference may be liable if its conduct in failing to require supervision or failing to warn unreasonably created a risk of the type of harm that plaintiff suffered. *See Fazzolari v. Portland School Dist. No 1J*, 303 Or 1, 17, 734 P2d 1326 (1987) ("[T]he issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."); *Washa v. DOC*, 159 Or App 207, 214, 221, 224-25, 979 P2d 273 (1999), *aff'd by an equally divided court*, 335 Or 403 (2003) ("under principles of *Fazzolari* general foreseeability," a risk of harm of the type that befell plaintiff, sexual assault and murder, was a reasonably foreseeable consequence of defendant's failure adequately to supervise parolee). Determining whether a risk of harm was forseeable to the corporate defendant requires us to apply imputation principles: A corporation "is not a sentient being and, therefore, cannot 'know,' be aware of, or discover anything, except through the agency of its * * * employees," and it "generally is charged with knowledge of facts that its agents learn within the scope

of their employment." *FDIC*, 328 Or at 429. Thus, whether a corporation knew or should have known of a risk of harm depends on whether its agents, within the scope of their work for the corporation, gained such knowledge. Likewise, the "acts" of a corporation constitute the acts of its agents performed within the scope of their work for the corporation. *State v. Oregon City Elks*, 17 Or App 124, 130, 520 P2d 900 (1974) ("Since a corporation is not a natural person, it can, by definition, act only through its officers and agents.").

In reviewing the denial of the Conference's motion for directed verdict, we consider the evidence, including any inferences, in the light most favorable to plaintiff, and the verdict cannot be set aside "unless we can affirmatively say that there is no evidence from which the jury could have found the facts necessary" to support the verdict. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). Accordingly, regarding the "failure to require supervision" specifications, we inquire whether plaintiff presented evidence from which a rational juror could conclude that, knowing what it knew (by imputation from its agents), the Conference, in failing to require Pumford to supervise A, created a foreseeable risk that A would act out sexually to the detriment of other children. Regarding the "failure to warn" specification, we are mindful that "[t]he risk of harm that we analyze * * * is not the hazard itself * * * [but] the chance that someone will predictably be exposed to danger if no warning is made." *Buchler v. Oregon Corrections Div.*, 316 Or 499, 508, 853 P2d 798 (1993). Therefore, we ask whether plaintiff presented evidence from which a rational juror could conclude that, knowing what it knew (by imputation from its agents), the Conference, in failing to warn the elders of the Salem parish, created a foreseeable risk that a parish child would be exposed to the danger of A acting out sexually. We conclude that plaintiff presented evidence from which a rational juror could have found facts supporting its verdict that "defendant [was] negligent in one or more ways as alleged" in plaintiff's complaint.

The record indicates that plaintiff presented evidence that, before transferring Pumford to Salem, the Conference, through its agents, knew that A had claimed to be sexually active, had expressed a desire to "smother" a

child parishioner with his body and kiss her, and had described "foreplay." The record also indicates that Silvestri warned a parish mother in Washington about A's sexual interest in her young daughter before Pumford was transferred to Salem. The foreseen risk that A presented to child parishioner B was the type of harm that plaintiff experienced, namely sexual molestation of a female coparishioner. In addition, the jury heard testimony that the scope of a Seventh-Day Adventist pastor's duty includes investigating and reacting to reports of the type of misconduct that had been attributed to A. Under those facts, a rational juror could find that the type of harm that plaintiff suffered was foreseeable and that therefore the Conference's failures to require supervision and to warn were unreasonable. The trial court did not err in denying the Conference's motions for a directed verdict.

■ ■ Finally, the Conference assigns error to the trial court's following instruction, based on Uniform Civil Jury Instruction No. 30.03, Corporation Acts Through Agents:

> "And you are instructed that the Oregon Conference of Seventh-Day Adventists can only act through its officers, agents or employees. In this case, if any officer, agent or employee of the Oregon Conference was negligent in one or more respects as charged against that party, such negligence is to be treated as the act of the corporation if within the scope of that person's authority."

According to the Conference, that instruction was erroneous because it allowed the jury to return a verdict in favor of plaintiff based solely on the negligence of Pumford, an agent of the Conference, regardless of whether the Conference itself was negligent. Plaintiff argues that the Conference's exception was not sufficient to bring that argument to the attention of the trial court, and that, even if it was and even if the instruction was erroneous, it was not prejudicial. We agree.

Under ORCP 59 H, "no instruction given to a jury shall be subject to review upon appeal unless its error, if any, was pointed out to the judge who gave it * * *. Any point of exception shall be particularly stated * * *." As with assignments of error generally, "[a] party who disagrees with a proposed jury instruction must specifically inform the court of

the grounds for the exception, so the court may have an opportunity to correct any mistake." *Propp v. Long*, 129 Or App 273, 277, 879 P2d 187 (1993), *rev den*, 320 Or 271 (1994). The exception must "call the trial court's attention to a *specific* objection" and must not be "too general." *Fickert v. Gallagher*, 274 Or 139, 141, 544 P2d 1032 (1976) (emphasis added). Here, the Conference excepted to the above instruction by stating, "This is not a vicarious liability case, so we except to that one." We must ask whether the Conference's exception specifically diagnosed the error that it identifies on appeal so that the trial court could have made any warranted correction.

The Conference's remark that "this is not a vicarious liability case" was fatally imprecise. The theory of vicarious liability imposes liability on one person for the acts of another. *See generally* Dan B. Dobbs, *The Law of Torts* § 333, 905 (2001). The term encompasses a variety of situations: co-conspirators, partners, and joint venturers can all be vicariously liable for each other's torts or crimes. When the "person" upon which liability ultimately rests is a fictive person, that is, a corporation, the only kind of liability that can conceivably exist is vicarious: a corporation, as the Conference acknowledges and as the first sentence of the disputed instruction declares, "can only act through its officers, agents or employees." In order to explain and preserve the argument that it now makes on appeal, the Conference should have objected on the ground that "this is not a *respondeat superior* case." That objection would have conveyed to the trial court the argument that the instruction would permit the jury to find the Conference liable if it found that one of its agents was negligent even though the Conference was not. *Hanson v. Versarail Systems, Inc.*, 175 Or App 92, 100, 28 P3d 626 (2001) (*respondeat superior* permits imposition of liability on innocent employer for wrongdoing of servant).

However, *even if* the Conference had made that argument clearly, the disputed instruction could not have caused substantial prejudice. According to the Conference, the disputed instruction allowed the jury to conclude that the Conference was liable even if it was not negligent. Negligence, as we have pointed out, occurs when "conduct unreasonably create[s] a foreseeable risk to a protected interest of the kind of

harm that befell plaintiff." *Fazzolari*, 303 Or at 17. To conclude that Pumford was negligent (and then wrongly to impute his negligence to the Conference), the jury would have had to conclude that any person who knew what Pumford knew and who "acted" as he did, that is, who failed adequately to supervise or warn, created the foreseeable risk that A would do what he did. That conclusion, in turn, necessarily implies that any "person" with knowledge of the same facts who failed adequately to supervise or warn would be equally as negligent. As we have noted above, it cannot be disputed that the Conference had all of the knowledge that Pumford had; Pumford obtained his knowledge from Silvestri, another Conference agent; Silvestri's knowledge *is* the Conference's knowledge under the following uncontested jury instruction:

> "[T]he knowledge of any Oregon Conference officer, employee or agent is legally imputed to the corporate defendant, the Oregon Conference, if this knowledge is received within the scope and course of the employee's employment and is of the type that the employee is authorized to receive."

Further, it is undisputed that the Conference failed to act in response to this knowledge; the Conference's case relies on arguments that it had no duty to act and that it lacked the knowledge that would have required it to act, not on an argument that it took sufficient (or any) action. Thus, a *respondeat superior* instruction could not, as the Conference alleges on appeal, "enlarge the theory of liability." It could not have allowed the jury to conclude that the Conference, although innocent, was liable for Pumford's negligence, because if the jury concluded that Pumford was negligent, then, by necessary implication, the Conference—having the same knowledge and failing to take the same precautions—was negligent as well.

Affirmed.