Argued and submitted January 20, affirmed April 20, petition for review denied September 15, 2011 (350 Or 716)

## Jacqueline HAMMER,
*Plaintiff-Respondent,*

*v.*

## FRED MEYER STORES, INC.,
a Delaware corporation,
*Defendant-Appellant.*

Josephine County Circuit Court
05CV0875; A142677

255 P3d 598

Edward H. Talmadge argued the cause for appellant. With him on the briefs was Frohnmayer, Deatherage, Jamieson, Moore, Armosino & McGovern, P.C.

Megan E. Dolan argued the cause for respondent. With her on the brief were Martin C. Dolan and Dolan Griggs LLP.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge, and Carson, Senior Judge.

BREWER, C. J.

## BREWER, C. J.

Defendant appeals from a judgment on a jury verdict for plaintiff in this premises liability action arising from personal injuries that plaintiff suffered while shopping in one of defendant's stores. In two assignments of error, defendant challenges the trial court's denial of its directed verdict motion and the giving of a *res ipsa loquitur* instruction to the jury. We affirm.

In reviewing the denial of defendant's motion for a directed verdict, we view the evidence and reasonable inferences that can be drawn from it in the light most favorable to plaintiff. *Greist v. Phillips*, 322 Or 281, 285, 906 P2d 789 (1995). Our review "is circumscribed by the case actually presented to the jury through pleadings, evidence, and jury instructions." *Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 333 Or 304, 310, 39 P3d 846 (2002). In addressing defendant's jury instruction challenge, we view the evidence supporting the giving of the instruction in the light most favorable to plaintiff, the party requesting the instruction. *Jett v. Ford Motor Company*, 192 Or App 113, 120, 84 P3d 219, *rev den*, 337 Or 160 (2004). In light of that view of the evidence, we review to determine whether the instruction given by the trial court was a correct statement of the law. *See generally State v. Rogers*, 313 Or 356, 383, 836 P2d 1308 (1992), *cert den*, 507 US 974 (1993). Further, an erroneous instruction constitutes reversible error only if it "prejudiced the defendant when the instructions are considered as a whole." *State v. Williams*, 313 Or 19, 38, 828 P2d 1006 (1992).

As pertinent here, the evidence at trial showed that, while plaintiff was shopping at a Fred Meyer store, she removed a half-gallon carton of lemonade from a display shelf. The shelf was located in a refrigerated "end cap" display at the end of a shopping aisle. The shelves in the end cap were four or five feet wide and were designed to fit into the end cap and fasten down. The cartons of lemonade were loaded on a shelf inside the end cap that was at chest-level to plaintiff. The cartons were loaded, facing forward, all the way across the shelf.

When plaintiff took one of the cartons from the shelf, the shelf flipped up from the back, ejecting additional cartons

of lemonade from the shelf toward plaintiff. After the shelf flipped up and ejected the cartons, it snapped back down. Plaintiff attempted to dodge the falling cartons but, despite her efforts, a couple of the cartons struck her. In attempting to get out of the way, plaintiff suffered injuries to her neck and shoulders. As a consequence of those injuries, plaintiff incurred substantial medical expenses. Plaintiff ultimately filed this action, alleging in her complaint that the shelving display in the end cap was defective and that defendant was negligent in failing to exercise reasonable care to protect plaintiff from, or warn her against, the danger posed by the defective shelf display.

When the accident occurred, a supplier's representative, Donald Anderson, was stocking shelves nearby. Anderson heard a noise that sounded like items falling to the floor. When he looked toward the direction of the noise, Anderson saw cartons "still falling," and plaintiff was standing by other fallen cartons. When Anderson attempted to place the fallen cartons back in the middle part of the shelf, the shelf tipped forward toward him, so Anderson shoved the cartons all the way to the back of the shelf. Anderson then notified one of defendant's employees that there was a problem with the shelf that needed to be fixed.

Defendant's store manager, Sowers, testified that defendant owns the end caps located in its stores. According to Sowers, when an employee builds an end cap display, product is taken off shelves and moved around. In that process, shelves and end caps can be moved around the store every week or two. Defendant does not have a designated employee who is responsible for inspecting whether shelving is correctly installed. Sowers testified that defendant's employees are responsible for noticing and fixing shelves that are unstable, sagging, or not properly installed.

Defendant's food manager, Alexander, was responsible for overseeing display (including end cap) safety, product safety, and product placement, in the store where plaintiff was injured. Alexander was unaware of any policy regarding how much product could be placed on a shelf or the weight capacity for end cap shelves. There was a policy that required employees to stack an end cap shelf until it was full.

Alexander testified that, in the past, defendant had had to replace shelves in end cap displays. Inspections occurred if Alexander was notified of a problem with a display; however, there was no regular inspection system in place, nor were there maintenance or inspection logs for end cap displays at the store.

Scott McElroy, an independent risk consultant, testified as an expert witness on behalf of plaintiff. McElroy testified that, because defendant had failed to conduct safety audits, allowed improper stacking of product on store shelves without adequate attention to weight, and allowed improper loading of shelves in the store, defendant "did not meet the standard of care to protect the public from injury." McElroy also testified that defendant had failed to provide its store employees with specific training about shelving, and that shelves could become loose, metal components could become worn, or shelves could be improperly inserted into racks. McElroy could not testify to the precise mechanism that caused the shelf to tip in this case, but he opined:

"[T]he shelf doesn't fall on its own. And the shelves are supposed to be secure enough where you can reach up and grab an item from the shelf, and not have it collapse which appears to be what happened."

Defendant moved for a directed verdict at the conclusion of plaintiff's case-in-chief, and again at the close of the evidence, on the ground that plaintiff could not prevail because there was no evidence that defendant knew of a problem with the shelf or was aware of a danger before the accident occurred in this case. The trial court denied those motions. At the end of the trial, among the other instructions that it gave, the court instructed the jury concerning the doctrine of *res ipsa loquitur*, using a modified version of Uniform Civil Jury Instruction 24.01.[1] We consider below whether defendant adequately objected to the instruction.

The jury found that defendant was negligent in one or more of the ways alleged in plaintiff's complaint and that defendant's negligence caused plaintiff damage; it awarded plaintiff economic and noneconomic damages in the total

---

[1] Both versions of the instruction are set out below.

amount of $362,000. Defendant appeals from the ensuing judgment that the trial court entered on the jury's verdict.

We first address defendant's argument that the trial court erred in denying its motions for directed verdict. Plaintiff's claim invokes the legal duty owed by a land occupier to business invitees. Defendant asserts on appeal, as it did before the trial court, that plaintiff adduced no evidence that defendant had discovered, or in the exercise of reasonable care should have discovered before plaintiff was injured, any defect in the shelf display. According to defendant, the trial court—in reaching a contrary conclusion—erroneously applied the doctrine of *res ipsa loquitur* to identify permissible inferences from which the jury could find that defendant was negligent. In particular, defendant asserts that the trial court overlooked controlling case law establishing that that doctrine cannot be invoked in the circumstances of this case.

The Supreme Court summarized the legal duty owed by a land occupier to business invitees in *Woolston v. Wells*, 297 Or 548, 557-58, 687 P2d 144 (1984):

> "In general, it is the duty of the possessor of land to make the premises reasonably safe for the invitee's visit. The possessor must exercise the standard of care above stated to discover conditions of the premises that create an unreasonable risk of harm to the invitee. The possessor must exercise that standard of care either to eliminate the condition creating that risk or to warn any foreseeable invitee of the risk so as to enable the invitee to avoid the harm."

*Res ipsa loquitur* is a rule of circumstantial evidence that permits a jury to infer both negligence and causation if the harm that occurs is " 'of a kind that which more probably than not would not have occurred in the absence of negligence on the part of the defendant' " *McKee Electric Co. v. Carson Oil Co.*, 301 Or 339, 353, 723 P2d 288 (1986) (quoting *Watzig v. Tobin*, 292 Or 645, 649, 642 P2d 651 (1982)); *Fieux v. Cardiovascular & Thoracic Clinic, P.C.*, 159 Or App 637, 640, 978 P2d 429, *rev den*, 329 Or 318 (1999). A plaintiff must establish the fundamental elements of the doctrine before an inference of negligence or causation will be permitted, namely, (1) that there is an injury, (2) that the injury " 'is of a kind which ordinarily does not occur in the absence of someone's negligence,' " and

(3) that the negligence that caused the event was more probably than not attributable to a particular defendant. *Umpqua Aquaculture, Inc. v. Ron's Welding*, 111 Or App 220, 223-24, 826 P2d 31 (1992) (quoting *Barrett v. Emanuel Hospital*, 64 Or App 635, 638, 669 P2d 835, *rev den*, 296 Or 237 (1983)). In *Pattle v. Wildish Construction Co.*, 270 Or 792, 797, 529 P2d 924 (1974), the court explained that, in order to satisfy the third element, the defendant need not have had exclusive physical possession of the injury-producing instrumentality. Rather, it must appear from the evidence that the negligence of which the thing speaks is probably that of defendant and not of another. *Wilson v. Cooke*, 174 Or App 426, 26 P3d 822 (2001). Whether a reasonable juror could draw such an inference is an issue of law to be determined by the court. *Fieux*, 159 Or App at 639-40.

With that introduction, we turn to defendant's argument. According to defendant, this case is controlled by the Supreme Court's decision in *Lee v. Meier & Frank Co.*, 166 Or 600, 114 P2d 136 (1941), where the court held that a customer who had tripped over a pillow in the aisle of a store failed to state a claim against the owner of the store. The plaintiff's theory was

> "that (1) the defendant's pillow rack was not of sufficient size; (2) the rack was not provided with a sufficient guard to prevent pillows from falling into the aisle; and (3) the defendant piled pillows in the rack 'at a careless and negligent height, manner and arrangement.'"

166 Or at 602. Nevertheless, the storekeeper was not liable, because it had not placed the pillow in the aisle, did not actually know of its presence, and had no constructive notice arising from the pillow's presence on the floor for a sufficiently long time. *Id.* at 604-05.

Defendant also invokes *Fuhrer v. Gearhart By The Sea, Inc.*, 306 Or 434, 760 P2d 874 (1988). In that case, the plaintiff's decedent, a guest at the defendant's hotel, died while attempting to rescue some children, also guests of the hotel, who were apparently caught in an undertow or some other hazardous condition of the surf on the beach next to the hotel. The plaintiff alleged that the decedent's death was the

result of the defendant's failure to warn its guests about the dangerous condition of the surf or to provide safety measures.

The court first determined the appropriate analytical approach to be followed when the negligence alleged is a failure to warn or protect:

> "Failure to warn or protect should be analyzed in terms of foreseeability and unreasonable conduct. If a specific affirmative duty is imposed by statute, status or relationship, an analysis based on that specific duty is also appropriate. As noted in *Fazzolari* [*v. Portland School Dist No 1J*, 303 Or 1, 734 P2d 1326 (1987)], the difference between a traditional duty analysis and a foreseeability analysis may be only semantic. In 'duty' terms, a defendant may be found to have a duty to warn another of an undue risk of harm to a protected interest of the other if the defendant knows of the risk. *See* the discussion of *Prosser and Keeton*, The Law of Torts (5th ed 1984), and *Harper, James & Gray*, The Law of Torts (2d ed 1986), in *Fazzolari*, 303 Or at 9. If the defendant has a specific duty to the plaintiff, the defendant may also be liable without knowledge of the risk; that depends on the terms of the particular duty. Absent an affirmative duty, the existence of a 'duty' in the given circumstances is a conclusion to be reached, not a means of analysis."

*Fuhrer*, 306 Or at 438. The court then considered the role of the defendant's status as innkeeper in the negligence analysis, noting that, under the *Restatement (Second) of Torts* § 314A, an innkeeper's duties to its guests traditionally encompassed an affirmative duty to warn only of nonobvious dangerous conditions on the premises. *Fuhrer*, 306 Or at 440-41. The court held that

> "[i]nnkeepers and possessors of land have an affirmative duty to warn their paying guests and invitees of foreseeable unreasonable risks of physical harm; when the risk involves a dangerous condition off the premises, the trier of fact must decide the reasonableness of the failure to warn in all the circumstances."

*Id.* at 441.

■ As defendant sees things, the principles applied in *Lee* and *Fuhrer* govern all premises liability cases and, because there was no evidence of defendant's "potential knowledge of the problem with the shelf[,]" the trial court

was required to grant defendant's motion for a directed verdict. Moreover, defendant urges, plaintiff was not entitled to invoke *res ipsa loquitur* because there was no evidence that defendant had the requisite "control" over the shelf in this case. According to defendant, this premises liability case is analogous to a slip-and-fall case involving foreign substances on a floor, where the Supreme Court has held that the doctrine of *res ipsa loquitur* is inapplicable. *German v. Kienow's Food Stores*, 246 Or 334, 336, 425 P2d 523 (1967). Defendant reasons:

> "Essentially, the shelf at issue in this case is open to manipulation by the public similar to a grape or any other piece of produce. The shelf can be bumped, banged, manipulated, loosened or moved by other customers in the store without defendant's knowledge. Similar to produce on shelves in the store, a product on the shelf can be manipulated, moved, opened, or positions changed without the defendant's knowledge. There was no proof offered as to whether the shelf had been in the condition that injured plaintiff for two minutes or two hours."

As defendant frames its argument, the dispositive issue with respect to its first assignment of error is not whether there was a "problem with the shelf"; defendant appears to concede that the evidence was sufficient to create a reasonable inference that the injury-producing event was of a kind which ordinarily does not occur in the absence of someone's negligence. In short, the sufficiency of the evidence with respect to the first and second elements of *res ipsa loquitur* is not at issue. Rather, the issue is whether plaintiff satisfied the third element by adducing sufficient evidence to create a reasonable inference that the negligence that caused the shelf to flip up was more probably than not attributable to defendant.

The Supreme Court's decision in *Kaufman v. Fisher*, 230 Or 626, 636-40, 371 P2d 948 (1962), informs our analysis of defendant's argument. In that case, the court adopted a practical test for the third element:

> "Whether the inference of negligence is drawn from specific conduct or simply from the fact that the accident happened, the test of preponderating probabilities is the same; in either case plaintiff can get to the jury if there is a

rational basis for concluding that it was more probable than not that the defendant's failure to exercise reasonable care was the cause of the accident.

"* * * * *

"We come then to the question of whether the doctrine of res ipsa loquitur applies to the present case. Could it have been reasonably found by the jury that the accident which occurred in this case is of a kind which more probable than not would not have occurred in the absence of negligence upon the part of [the defendant]? That is a question which cannot be answered with any precision because we do not have statistical data on the relative probability of the negligence of drivers as a cause of this kind of accident. The determination of where the probabilities lie must, ordinarily, be made upon the basis of past experience as it is seen and appraised by the court. 'These are the judgments of "common sense."' 2 *Harper & James*, Torts § 15.2, p. 879 (1956).

"The process of judgment involves an examination of the inventory of possible causes for an accident of the kind in question. Initially this inquiry is made by the trial judge in determining whether the case should be submitted to the jury. Upon the basis of [the judge's] understanding of how accidents of the kind in question happen he [or she] decides where the probabilities lie. If [the judge] decides that the probabilities of non-negligent causes are as great or greater than the probability of a negligent cause attributable to the defendant he [or she] withdraws the case from the jury. On the other hand, if, from the same source of knowledge, [the judge] concludes that accidents of the kind in question more often than not occur because of someone's negligence (or if he [or she] is of the opinion that expert testimony probably would demonstrate this proposition), [the judge] submits the case to the jury. The conclusion thus reached by the trial judge is tentative only because the jury may conclude otherwise. Therefore, although we frequently speak in terms of our own examination of the probabilities * * * we are simply saying that because we are of the opinion that the probability of the defendant's negligence is greater than the probability of other causes the jury is entitled to reach the same conclusion, although it is not required to do so."

(Internal citations and footnotes omitted.)

With that test in mind, we conclude that the evidence in this case was sufficient to create a triable issue of fact. We reject defendant's assertion that a shelf in a store fixture such as the end cap in this case is analogous to the presence of produce or a liquid spill on a store floor, where the store owner's control of the instrumentality is so nonexclusive that a liability-producing inference is not probable. As plaintiff's evidence showed, defendant was in charge of installing, handling, moving, and inspecting the end cap and the shelf within it. Moreover, there was no evidence in this case that plaintiff or any third person altered, manipulated, damaged, or mishandled the defective shelf. Neither the evidence nor common sense suggests that customers ordinarily handled or manipulated the shelves on which defendant displayed merchandise, as opposed to the merchandise itself. In that regard, this case is meaningfully different from *Fuhrer*, which was a classic failure to warn case that involved an instrumentality—the ocean surf—over which the defendant had no responsible control whatsoever.

It is also distinguishable from cases such as *Lee*, where the plaintiff tripped over a pillow—in effect, a foreign substance—that had fallen onto a store floor. *Compare Gow v. Multnomah Hotel, Inc.*, 191 Or 45, 65, 224 P2d 552, 228 P2d 791 (1950) (inference of the defendant's negligence was permissible where the defendant had "exclusive responsible control" over a restaurant counter stool that broke, causing the customer to fall). Defendant insists that *Lee* is analogous to this case, because, in that case, the plaintiff alleged that the storage racks in which the pillows were displayed were defective or that they had been improperly loaded. We disagree with 'defendant's understanding of that case. The Supreme Court has consistently characterized *Lee* as a case involving the presence of a foreign substance on the floor of business premises. *See, e.g., Cowden v. Earley*, 214 Or 384, 387-88, 327 P2d 1109 (1958); *Waller v. N. P. Ter. Co. of Oregon*, 178 Or 274, 303, 166 P2d 488 (1946). *Starberg v. Olbekson*, 169 Or 369, 375, 129 P2d 62 (1942), is illustrative:

> "In [*Lee*] * * * it was held that the owner of a mercantile establishment owes a duty to his customers to use the care of a reasonably careful and prudent person to keep the passageways used by the customers in a reasonably safe

condition so that the customers will not be exposed to danger unnecessarily. It was also held there that a storekeeper is not an insurer of the customers' safety. It was also held, in substance, that where a customer stumbles over an object in an aisle in the store or slips on a foreign substance on the floor, the storekeeper is not liable unless he placed the object in the aisle or the slippery substance on the floor, or unless he had actual knowledge of its presence or constructive notice concerning it for a sufficiently long time.

"The rule deducible from these authorities is that before the proprietor of a store can be held liable to a customer for an injury caused by slipping on some foreign substance on the floor, the evidence must show either that he or his agents placed it there or that they knew or, by the exercise of reasonable diligence upon their part, would have known that it was there and failed to remove it."

This court has understood *Lee* in the same way. *See Rex v. Albertson's, Inc.*, 102 Or App 178, 182, 792 P2d 1248 (1990) (describing *Lee* as a case where "the storekeeper was not liable, because it had not placed the pillow in the aisle, did not actually know of its presence, and had no constructive notice arising from the pillow's presence on the floor for a sufficiently long time").

Contrary to defendant's understanding, the soundness of the trial court's ruling in this case does not depend on the existence of different standards of liability in slip-and-fall cases in contrast to other premises liability cases. Rather, it is the nature of cases involving foreign substances on a floor that precludes satisfaction of the third element of *res ipsa loquitur*, thereby rendering that doctrine inapplicable in such cases *as a rule of circumstantial evidence*. The courts in *Lee* and *Rex* did not even refer in passing to the doctrine of *res ipsa loquitur*, presumably because the plaintiffs in those cases recognized the futility of reliance on the doctrine under the facts of those cases. Accordingly, the jury was entitled to infer that the negligence that caused plaintiff's injuries was more probably than not defendant's, and the trial court did not err in denying defendant's motion for a directed verdict.

We turn to defendant's second assignment of error, in which it asserts that the trial court erred in instructing the jury regarding the doctrine of *res ipsa loquitur*. Defendant's

objection has three prongs. We reject without additional discussion defendant's first argument, namely, that the instruction was improper because the evidence was insufficient to permit invocation of the doctrine. Defendant argues, alternatively, second, that the uniform instruction, even in its unmodified form, is inconsistent with Oregon law because "it ignores the element of exclusive control," and, third, that, as modified, the uniform instruction that the court gave was erroneous because it improperly shifted the burden of proof with respect to the absence of its own negligence to defendant.

Plaintiff requested that the trial court instruct the jury regarding *res ipsa loquitur*. Plaintiff first asked the court to give Uniform Civil Jury Instruction 24.01, which provides:

"The law assumes that all persons have obeyed the law and have been free from negligence.

"However, you may find that the defendant was negligent if you find that the incident that caused damage to the plaintiff is one that, in the normal course of events, would not have occurred unless the defendant was negligent."

Defendant objected to the giving of that instruction on the ground that, for the reasons set out in support of its motion for a directed verdict, no instruction regarding *res ipsa loquitur* was appropriate in this case. After an extended colloquy, the court advised counsel that it intended to give the uniform instruction. Plaintiff then asked the trial court to further instruct the jury regarding the effect of the doctrine. After an additional colloquy between the court and counsel, the court added the following paragraph at the end of the uniform instruction and so instructed the jury:

"In that case, the burden then shifts to the defendant to put forth evidence that the negligence was not its own negligence."

In response to that additional request, defendant's attorney stated: "Well absolutely not. I think you just stick with the *res ipsa* instruction, and let him make his argument." After the court instructed the jury, defendant's counsel reiterated:

"The *res ipsa loquitur* instruction: Again, for all the reasons I stated on the record, but I want to restate those just

briefly. I just don't believe this is a *res ipsa* case. I believe that it should have gone to the jury on a regular negligence instruction."

Plaintiff asserts that defendant failed to preserve either of the alternative objections to the instruction that it asserts on appeal. Defendant argues that its general objections to the giving of the instruction—both before and after the jury was instructed—sufficed to preserve each of the particular arguments that it makes on appeal.

We agree with plaintiff that defendant failed to preserve its argument that the unmodified version of the uniform instruction inaccurately stated the law. ORCP 59 H provides:

"(1)   Statement of issues or instructions given or refused. A party may not obtain review on appeal of an asserted error by a trial court in submitting or refusing to submit a statement of issues to a jury pursuant to subsection C(2) of this rule or in giving or refusing to give an instruction to a jury unless the party who seeks to appeal identified the asserted error to the trial court and made a notation of exception immediately after the court instructed the jury.

"(2)   Exceptions must be specific and on the record. A party shall state with particularity any point of exception to the trial judge. A party shall make a notation of exception either orally on the record or in a writing filed with the court."

Under ORCP 59 H, "to preserve an error in instructions given to a jury for appellate review, the aggrieved party must point out the error to the trial court, and a notation of that exception must be made after the court instructs the jury." *Bennett v. Farmers Ins. Co.*, 332 Or 138, 152-53, 26 P3d 785 (2001) (emphasis omitted). In addition, "[a] party shall state with particularity any point of exception to the trial judge." ORCP 59 H(2). Thus, the requirements of ORCP 59 H are congruent with the more general directive that a party "must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22

(2000); *see also State v. Wideman*, 203 Or App 359, 364, 124 P3d 1271 (2005) (preservation rules are meant to ensure "that the position of a party is presented clearly to the trial court and that parties are not taken by surprise, misled, or denied opportunities to meet an argument").

Defendant's generalized objection to any instruction regarding *res ipsa loquitur* did not particularly assert that the uniform jury instruction inaccurately stated the law in any respect. In fact, to the contrary, in responding to plaintiff's argument for the additional *res ipsa loquitur* instruction before the jury was instructed, defendant's counsel stated:

> "Well absolutely not. I think you just stick with the *res ipsa* instruction, and let him make his argument."

Nothing in that statement or any other portion of the colloquy about jury instructions—either before or after the jury was instructed—informed the court that the uniform instruction failed to address an essential element of the doctrine or otherwise was inaccurate. Accordingly, we do not consider the merits of defendant's second instructional error argument.

We turn to defendant's argument that the addition that the trial court made to the uniform instruction was erroneous, because "it implies to the jury that the inference of negligence is compelled and it is up to the defendant to rebut that compelled inference." Again, plaintiff asserts that defendant did not preserve that argument before the trial court. We agree with plaintiff that, for the reasons explained above, defendant's general objections to the giving of a *res ipsa loquitur* instruction did not suffice to preserve the particular argument that defendant now makes. The question, rather, is whether defendant's counsel's statement, before the jury was instructed, that, "I think you just stick with the *res ipsa* instruction, and let him make his argument[,]" satisfied the strictures of ORCP 59 H(2). In determining whether a party objects with "sufficient particularity," the general rule is that,

> " '[a] party who disagrees with a proposed jury instruction must specifically inform the court of the grounds for the exception, so the court may have an opportunity to correct any mistake.' *Propp v. Long*, 129 Or App 273, 277, 879

P2d 187 (1994), *rev den*, 320 Or 271 (1994). The exception must 'call the trial court's attention to a specific objection' and must not be 'too general.' *Fickert v. Gallagher*, 274 Or 139, 141, 544 P2d 1032 (1976)."

*Doe v. Oregon Conference of Seventh-Day Adventists*, 199 Or App 319, 327-28, 111 P3d 791 (2005).

For example, in *Doe*, the instruction at issue informed the jury that it could impose liability on the defendant corporation based on the negligence of its agent, regardless of whether the defendant itself was negligent. We held that the defendant's objection was "fatally imprecise" because the defendant simply stated that "[t]his is not a vicarious liability case * * *." *Id.* at 328. We explained that "vicarious liability" is a general term that encompasses a variety of circumstances, particularly where the only "person" upon whom liability rests is fictitious (such as a corporation). In those instances, the only liability that can exist is vicarious. Thus, the exception was not specific enough to alert the trial court to the alleged problem in the challenged instruction. *Id.*

A similar problem exists here. On appeal, defendant makes a particular argument that the addition that the trial court made to the uniform instruction improperly shifted the burden of proof to defendant; however, defendant never alerted the trial court to that particular problem, either before or after the jury was instructed. Although defendant's counsel objected to the addition before the jury was instructed, he merely stated, without explaining why, that the court should give the uniform instruction instead. That objection did not "cogently present for the trial court's consideration the alleged deficiencies in that instruction that plaintiffs urge on appeal." *Peitsch v. Keizer*, 219 Or App 114, 116, 180 P3d 1239 (2008). Moreover, in excepting to the instruction immediately after it was given, defendant's counsel merely reiterated defendant's general objection to the giving of *any* instruction regarding *res ipsa loquitur*. In that regard, defendant's post-instruction exception, which was required under ORCP 59 H(1), also did not identify the issue defendant now seeks to raise. It follows that defendant failed to

preserve either of its alternative objections on appeal to the challenged instruction.

Affirmed.